James W. ALDRIDGE, Jr., et al., Appellants,

v.

Gilberto DE LOS SANTOS, et al., Appellees.

No. 13–93–335–CV.

Court of Appeals of Texas, Corpus Christi.

May 26, 1994.

Rehearing Overruled June 23, 1994.

---

Toni Hunter, Asst. Atty. Gen., Chief, Gen. Litigation Div., David J. Guillory, Asst. Atty. Gen., Gen. Litigation Div., Austin, Joseph R. Preston, Clark & Preston, P.C., Mission, Gary Henrichson, Edinburg, Larry R. Daves, San Antonio, Dan Morales, Atty. Gen., Will Pryor, First Asst. Atty. Gen., Mary F. Keller, Deputy Asst. Atty. Gen., Jorge Vega, First Asst. Atty. Gen., Austin, Roger W. Hughes, Adams & Graham, Harlingen, for appellants.

James A. Kosub, San Antonio, Daniel Maeso, Asst. Dist. Atty., Jourdanton, Juan Chavira, Asst. Dist. Atty., Karnes City, for appellees.

Before SEERDEN, C.J., and GILBERTO HINOJOSA and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

This is an interlocutory appeal from an order denying appellants' motion for summary judgment. Appellants were defendants in the trial court.

In 1989, the 71st Legislature passed an Act abolishing the Board of Regents of Pan

American University (a state university) and transferring the "governance, operation, management, and control of Pan American University ... from the Board of Regents of Pan American University to the Board of Regents of The University of Texas System." Act of May 10, 1989, 71st Leg., R.S., ch. 181, 1989 Tex.Sess.Law Serv. 820 (Vernon). The Act took effect on September 1, 1989. *Id.* at 823.

Appellees, Gilberto De Los Santos, Wig B. De Moville, Walter E. Greene, Dewayne L. Hodges, and Anthony George Petrie, were professors in the School of Business Administration (SBA) at Pan American University (PAU) prior to September 1, 1989. After September 1, 1989, appellees continued working as professors at The University of Texas—Pan American (UTPA).

■ Appellees sued thirty-seven colleagues at the university, claiming defamation, tortious interference with contract, and negligent infliction of emotional distress. By a single point of error, appellants complain that the trial court erred by denying their motion for summary judgment because, as employees of the State of Texas, they have official immunity [1] against appellees' claims.

The record reflects that in early 1989, PAU School of Business Administration Dean F.J. Brewerton appointed appellees to serve on a Merit Improvement Committee (MIC) to review the merit pay system in the School of Business Administration. On June 30, 1989, after initiating a "fact-finding" inquiry into the publications of five SBA faculty members, the members of the MIC concluded that two of their colleagues, Dr. Charles Ellard and Dr. Daniel Lee, were exaggerating their publication credits and recommended that they be fired for "moral turpitude." On July 28, 1989, Dean Brewerton recommended to PAU President Miguel Nevarez that the two tenured professors' employment be terminated. On July 28,

1989, PAU Vice President for Academic Affairs Ronald Applebaum concurred in Dean Brewerton's recommendation. On August 2, 1989, President Nevarez appointed a Hearing Tribunal to investigate the case in accordance with the termination procedures mandated by the *Rules and Regulations* of the University of Texas System, even though Pan American University was not yet a part of the University of Texas System.[2] On August 24, 1989, the faculty of the College of Arts & Sciences of PAU, concerned by "the magnitude of the accusations" against fellow tenured faculty members, voted unanimously to request the PAU Faculty Senate to conduct an investigation into the MIC's activities. The Faculty Senate is an official university body elected by and composed of representative faculty members. The Faculty Senate appointed a Faculty Senate Investigating Committee, which, on August 30, 1989, began investigating the MIC's activities.

On September 1, 1989, Pan American University became The University of Texas—Pan American. On September 27, 1989, the first part of the Faculty Senate Investigating Committee report was released and discussed at the UTPA Faculty Senate meeting of October 4, 1989. The second part of the committee's report was discussed at the Senate meeting of November 1, 1989. A joint committee composed of the Faculty Senate Investigating Committee and the Faculty Senate Executive Committee subsequently recommended that the Senate postpone any action on the Ellard/Lee issue until the Hearing Tribunal had completed its investigation. The Faculty Senate agreed with the joint committee's recommendation.

On May 14, 1990, the Hearing Tribunal issued its findings. The Tribunal rejected the MIC's recommendations that Ellard's and Lee's employment be terminated and concluded that the MIC had acted beyond its

---

1. "Official immunity" is one of several interchangeable terms (including "qualified immunity," "quasi-judicial immunity," "discretionary immunity," and "good faith immunity") used to refer to an affirmative defense available for governmental employees sued in their individual capacities. *See City of Houston v. Kilburn,* 849 S.W.2d 810, 812 n. 1 (Tex.1993); *Travis v. City of*

*Mesquite,* 830 S.W.2d 94, 100 n. 2, 102–103 (Tex.1992) (Cornyn, J., concurring).

2. Neither the *Rules and Regulations* nor the *Policies and Procedures* of the university were included as summary judgment evidence.

permitted office. The Tribunal's report stated:

CONCLUSION: The MIC did not treat Professor Ellard in a fair and collegial manner during its investigations. And the MIC based its recommendation to terminate Professor Ellard upon a narrow and uninformed interpretation of general academic standards.

CONCLUSION: The MIC did not treat Professor Lee in a fair and collegial manner during its investigations. And the MIC based its recommendation to terminate Professor Lee upon a narrow and uninformed interpretation of general academic standards.

The Tribunal's report was released to the Faculty Senate on September 12, 1990. On September 19, 1990, the Faculty Senate, having considered the Tribunal's findings, passed a resolution censuring the members of the MIC for actions unbecoming members of the professorate. The Faculty Senate censured appellees for:

Failing to treat their colleagues in a fair and collegial manner during the MIC's investigation. The MIC exceeded the limits of its legitimate functions, failed to allow a tenured full professor sufficient time to prepare his defense against a recommendation for termination, and imposed its interpretation of unwritten academic standards on the proceedings. In so doing, the MIC displayed a lack of collegiality and fundamental fairness.

The Faculty Senate also censured Dean Brewerton and Vice–President Applebaum "for conduct unbecoming a member of the professorate" and reprimanded President Nevarez "for failing to exercise proper oversight."

On September 20, 1990, an article appeared in the Harlingen newspaper, *The Valley Morning Star,* which quoted then Senate Chair Jerry Polinard saying that the investigation was "distasteful" and that "it should have never occurred." Jim Aldridge, Secretary–Treasurer of the Texas Faculty Association, also commented on the Tribunal's findings and the Senate vote. Polinard subsequently wrote a letter to the editor of the UTPA newspaper, *The Pan American,* discussing the Ellard/Lee investigation and subsequent censure of the members of the MIC.

On September 18, 1991, appellees filed suit against twenty-one members of the 1990 Faculty Senate and four members of the Faculty Senate Investigating Committee. They also sued twelve other faculty members. Appellees claim 1) that appellants knew that their statements that appellees were "unfair and uncollegial" were false, 2) that appellants acted with reckless disregard as to whether the statements were true or not true, 3) that appellants' defamatory remarks were made in their individual capacities and outside the course and scope of their employment with UTPA, 4) that appellants acted with malice in publishing those statements, and 5) that in the process of publishing those statements, appellants interfered with appellees' contractual relationships and negligently caused emotional distress.

Appellees filed a First Amended Original Petition on December 9, 1991. Appellants answered with special exceptions and a general denial. Appellants also filed a plea in abatement, alleging that appellees had failed to state acts which would overcome appellants' official immunity. On March 5, 1992, the trial court granted appellants' plea in abatement. Appellees asked the trial court to reconsider its ruling, and on July 31, 1992, the trial court reversed itself and denied appellants' plea in abatement.

Appellants subsequently filed a joint motion for summary judgment, based on the following grounds:

1) that appellants are entitled to official or quasi-judicial immunity because 1) they are all public employees of the State of Texas, 2) appellants' actions involved consideration of facts gathered during an investigation and the exercise of judgment based on those facts, and 3) appellants' actions were made in good faith and were wholly within the scope of their authority;

2) that the twelve faculty members who were neither members of the 1990 Faculty Senate nor the Faculty Senate Investigating Committee are entitled to official immunity because 1) they are

public employees of the State of Texas and 2) appellees made no claim or allegation that these faculty members acted in bad faith or took any action outside the scope of their employment;

3) that appellees failed to state a cause of action for defamation, tortious interference with contract, and negligent infliction of emotional distress;

4) that the alleged defamatory remarks were true, merely expressions of opinion on a matter of concern to university faculty, or privileged;

5) that the alleged defamatory statements, as expressions of opinion, are protected under the free speech guarantees of both the federal and state constitutions; and

6) that appellees voluntarily injected themselves into an extremely controversial activity and, thus, are vortex public figures.

On June 9, 1993, after hearing argument and considering the evidence, the trial court denied the motion for summary judgment. Appellants appeal from the trial court's order denying the motion for summary judgment.

█ A motion for summary judgment must expressly state the grounds upon which it is made. *McConnell v. Southside School Dist.*, 858 S.W.2d 337, 341 (Tex.1993). A motion for summary judgment must stand or fall on the grounds expressly presented in the motion, and a court may not rely on briefs or summary judgment evidence in determining whether grounds are expressly presented. *Id.* A non-movant does not need to respond to a motion for summary judgment to complain on appeal that the motion was insufficient as a matter of law to support summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). Summary judgments may not be affirmed or reversed on grounds not expressly set forth in the motions presented to the trial court. *Id.* at 677; *Carlisle v. Philip Morris, Inc.*, 805 S.W.2d 498, 518 (Tex.App.—Austin 1991, writ denied); *Dhillon v. General Accident Ins. Co.*, 789 S.W.2d 293, 295 (Tex.App.—Houston [1st Dist.] 1990, no writ). *See City of Mission v. Ramirez*, 865 S.W.2d 579, 581 (Tex.App.—Corpus

Christi 1993, no writ). In *Carlisle*, the Austin Court of Appeals stated:

> In construing the effect of the 1978 amendments to Rule 166a, the Texas Supreme Court has expressed a strong concern that, in an appeal from a summary judgment, issues to be reviewed by the appellate court must have been actually presented to *and considered by* the trial court. (Emphasis in original).

*Carlisle*, 805 S.W.2d at 518 (citing *Clear Creek Basin Auth.*, 589 S.W.2d at 675–77).

█ The proper inquiry on appeal is whether the defendant, in seeking summary judgment, fulfilled his initial burden 1) to establish as a matter of law that there remains no genuine issue of material fact as to one or more essential elements of the plaintiff's cause of action, or 2) to establish his affirmative defense to the plaintiff's cause of action as a matter of law. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex.1989); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant must be taken as true. *Nixon*, 690 S.W.2d at 549. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Id.*

█ Under Texas procedure, appeals are allowed only from final orders or judgments. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992); *North East Indep. School Dist. v. Aldridge*, 400 S.W.2d 893, 895 (Tex. 1966). Unless a statute specifically authorizes an interlocutory appeal, Texas appellate courts have jurisdiction only over final judgments. *Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 365 (Tex.1985) (orig. proceeding); *Aldridge*, 400 S.W.2d at 895. Section 51.014 of the Civil Practice and Remedies Code specifically allows appeal of various interlocutory orders, including an order that "(5) denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state." *City of Houston v. Kilburn*, 849

S.W.2d 810, 812 (Tex.1993) (per curiam); *City of Mission,* 865 S.W.2d at 582.

■ Consequently, we address only the issue of "official or quasi-judicial" immunity raised by appellants in their motion for summary judgment. We do not address the remaining grounds asserted by appellants in *their motion for summary judgment.* Appellants submitted 151 pages of documents and 38 affidavits as summary judgment evidence. Appellees responded with 34 pages of documents and five affidavits as summary judgment evidence. We have reviewed all of the evidence considered by the trial court.

Alleging defamation, appellees sued Terry Allison, Victor Alvarado, Pearl Brazier, Carl Carlan, Paula F. Dean, Daniel Dearth, Juanita Garza, A. Virginia Haynie, Layne Jorgensen, Frank Judd, James Maloney, Frank Manuella, Hilda Medrano, Christopher Miller, Glynn Morgan, Nancy Moyer, Linda O'Daniel, Jerry Polinard, Thomas Pozorski, Olga Ramirez, and Bruce Wilson for voting to censure the members of the MIC at the September 19, 1990 Faculty Senate meeting.

Appellants' summary judgment evidence includes virtually identical affidavits from appellants, Allison, Alvarado, P. Brazier, Carlan, Dean, Dearth, Garza, Haynie, Jorgensen, Maloney, Manuella, Medrano, C. Miller, Morgan, Moyer, O'Daniel, Polinard, Pozorski, Ramirez, and Wilson. Each affidavit states that appellant was employed as a faculty member at the University of Texas—Pan American and that he or she served as a member of the Faculty Senate. The affidavits then state:

Service on university committees and organizations, such as the Faculty Senate, is part of the responsibilities of university faculty members. Such service is one of the criteria considered when making promotion and tenure decisions. The Pan American University Faculty Handbook states the following:

The purpose of the Faculty Senate is that of promoting the general welfare of the University by representing the faculty in matters relating to that body. The purpose is to be carried out (1) by serving as a channel for communication among students, faculty and administration; (2) by reviewing existing or proposed educational policy; (3) by reviewing proposals from faculty members or members of the administration; and (4) by initiating policy proposals for consideration by faculty or administration.

Appellants' affidavits conclude with the following statement:

At all times ·during my service on the Faculty Senate, I acted with the good faith belief that my actions were within the course and scope of my authority as a member of the Faculty Senate. I had no reason to believe that any action I took as a member of the Faculty Senate was in violation of any privilege or right protected by law.

I swear that the foregoing testimony is true and correct and based upon personal knowledge.

The evidence reflects that appellant Frank Judd was appointed by President Nevarez to be a member of the Hearing Tribunal. Judd's affidavit states that he served on the Faculty Senate from January 31, 1990 to December 1, 1991. Judd's affidavit includes the above statement from the Faculty Handbook, but adds the following statement:

At all times during my service on the Faculty Senate on all matters related to the censor of GILBERT DE LOS SANTOS, WIG B. DEMOVILLE, WALTER E. GREENE, DEWAYNE L. HODGES and ANTHONY GEORGE PETRIE, I abstained on all votes and refused to comment on the subject. Furthermore, I acted with the good faith belief that my actions were within the course and scope of my authority as a member of the Faculty Senate. I had no reason to believe that any action I took as a member of the Faculty Senate was in violation of any privilege or right protected by law.

I swear that the foregoing testimony is true and correct and based upon personal knowledge.

Appellees assert no claim for relief from any actions taken by Judd as a member of the Hearing Tribunal or for any other action taken by him as a member of the Faculty Senate.

In their motion and on appeal, appellants argue that the Faculty Senate Constitution required the Senate to investigate the MIC's activities after the faculty of the College of Arts & Sciences requested such an investigation. Appellants rely on section V(B)(4) of the Faculty Senate Constitution which states as follows:

The Senate must give consideration of any recommendation given it by any six voting members of the faculty.

Appellants also argue that the censure vote involved consideration of facts gathered by the Faculty Senate Investigating Committee and the Tribunal, and reflected the exercise of judgment on the basis of those facts. Appellants argue that this evidence establishes conclusively that their actions were done in good faith and wholly within the scope of their authority as employees of the state. Thus, they are entitled to summary judgment as a matter of law.

Appellees' summary judgment evidence includes 1) a memorandum, dated September 8, 1989, from President Nevarez to the UTPA faculty concerning the "Senate Investigation of Termination Charges,"[3] 2) a letter, dated January 21, 1991, from Dean Brewerton to the faculty concerning the creation of the MIC, 3) a letter dated July 8, 1991, from James P. Duncan, Executive Vice Chancellor for Academic Affairs of the University of Texas System, to President Nevarez,[4] and 4) a memorandum, dated July 18, 1991, from President Nevarez to the Faculty Senate.[5]

3. The memorandum states as follows:

Recently, I received a request from the Faculty Senate to postpone the work of a special hearing tribunal appointed to hear termination charges against two faculty members in the School of Business. The postponement was intended to allow time for the Faculty Senate to investigate such charges. I am unable to comply with their request for several reasons.

First, University of Texas—Pan American is now governed by the *Rules and Regulations* of the Board of Regents of the University of Texas System. Those rules provide for specific procedures to be followed in cases of termination for cause such as the ones at hand and it is my responsibility to ensure that they are followed. There is no role in those procedures for an investigative committee appointed by the Faculty Senate. The rules do provide for the protection of the rights of all parties.

Second, the two faculty members have requested a closed hearing before the tribunal. The administration has taken great care to respect the privacy interests of the individuals. I am extremely concerned about the public actions of the Faculty Senate and do not wish to sanction such publicity.

Third, this hearing procedure has worked well at other components of The University of Texas System. I have confidence in the integrity of the tribunal and encourage the Senate to share that respect.

Finally, the Faculty Senate's concerns regarding due process and applicable policy and procedure were thoroughly investigated prior to the appointment of the tribunal and another investigative committee serves no additional purpose. The hearing tribunal has been appointed and it is my understanding that it is ready to proceed in an orderly fashion. I urged the Faculty Senate not to proceed with its intended investigation.

4. The letter states as follows:

Recent U.T. Pan American Faculty Senate minutes indicate that the Faculty Senate has imposed or considered the imposition of "censure" against individual U.T. Pan American faculty members or administrators. One specific incident involved faculty members who, as members of the Merit Improvement Committee, participated in a committee deliberation at the request of the U.T. Pan American administration. I am concerned that the members of the Faculty Senate do not understand that they do not have disciplinary authority except as it relates to Faculty Senate members under provisions of the Constitution of the Faculty Senate i.e., the Faculty Senate is not authorized by U.T. System policies and the approved institutional Handbook of Operating Procedures policies to undertake disciplinary actions such as censure. This results in the members of the Faculty Senate acting as individuals rather than as an official institutional body with obvious legal implications.

Please advise the members of the Faculty Senate of this serious potential problem.

5. The memorandum states as follows:

As you are aware, this past year we have attempted to finalize many issues of importance to the Faculty Senate. One of the issues which I would like to address at this time is that of Faculty Senate Censure. I have recently received a statement regarding U.T. System policy on this issue. I realize that summer is not the best time to send this memorandum, and although I am bringing this to your attention now, I will be happy to address it further in the fall if need be.

The Faculty Senate has censured and reprimanded several individuals on this campus. Please be advised that the Faculty Senate is not authorized to take such disciplinary action. Dr. Duncan has sent the attached memoran-

Appellees contend that the September 8, 1989 memorandum shows that the Faculty Senate lacked authority to conduct its own investigation into the MIC's charges against Ellard and Lee. President Nevarez refused to comply with the Faculty Senate's request that he order the Hearing Tribunal to postpone its investigation and to allow the Faculty Senate to investigate the MIC's activities. It was President Nevarez's position that the *Rules and Regulations* of the University of Texas System outlined the specific procedures that had to be followed in cases of termination for cause and "(t)here is no role in those procedures for an investigative committee appointed by the Faculty Senate." President Nevarez further "urged the Faculty Senate not to proceed with its intended investigation."

Appellees argue that Vice–Chancellor Duncan's letter of July 8, 1991, and President Nevarez's follow-up memorandum of July 18, 1991, show that the Senate was not authorized under the governing policies and procedures of The University of Texas System to undertake disciplinary actions, such as censure, against faculty members. Having done so, appellees argue, the senators are subject to individual liability for their actions. In response, appellants argue that this evidence cannot be construed as having put the Faculty Senate "on notice" that it had no authority to discuss or recommend censure.

■■■■ It is a well settled principle that summary judgment may not be granted on conclusory evidence. Affidavits containing conclusory statements unsupported by facts are not competent summary judgment proof. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984); *Sanchez v. Memorial Medical Center Hosp.*, 769 S.W.2d 656, 659 (Tex. App.—Corpus Christi 1989, no writ); *Trapnell v. John Hogan Interest, Inc.*, 809 S.W.2d 606, 610 (Tex.App.—Corpus Christi 1991, writ denied). Affidavits supporting or opposing a motion for summary judgment must set forth such facts as would be admissible in evidence. *S.K.Y. Inv. Corp. v. H.E. Butt*

dum expressing his concern and the potential liability individuals take upon themselves when they do in fact take such disciplinary action.

*Grocery Co.*, 440 S.W.2d 885, 888 (Tex.Civ. App.—Corpus Christi 1969, no writ) (citing *Box v. Bates*, 162 Tex. 184, 346 S.W.2d 317 (1961)). Affidavits supporting or opposing a motion for summary judgment must be factual; conclusions of the affiant are not considered to have any probative value. *Id.* Affidavits consisting of legal conclusions are insufficient to establish an issue of fact in support of a motion for summary judgment. *Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex.1984); *Spencer v. City of Dallas*, 819 S.W.2d 612, 616 (Tex.App.—Dallas 1991, no writ).

■■■■ The defense of official immunity is an affirmative defense and must be pleaded and proved. *Perry v. Texas A & I Univ.*, 737 S.W.2d 106, 110 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.). When a defendant moves for summary judgment based on an affirmative defense, he must prove all of the elements of such a defense as a matter of law. *Austin v. Hale*, 711 S.W.2d 64, 66 (Tex.App.—Waco 1986, no writ) (citing *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984)). To prove that he is entitled to official immunity against suit, a defendant must provide sufficiently specific proof that he had the authority to perform the actions allegedly performed and that he acted in good faith and within the scope of his authority. *Edgar v. Plummer*, 845 S.W.2d 452, 453 (Tex.App.—Texarkana 1993, no writ) (citing *Campbell v. Jones*, 153 Tex. 101, 264 S.W.2d 425 (1954)); *Perry*, 737 S.W.2d at 110; *Austin*, 711 S.W.2d at 66–68. Some Texas courts have failed to recognize that official immunity is an affirmative defense and have erroneously shifted the burden to the plaintiff to prove that the defendant acted in bad faith. *See Travis v. City of Mesquite*, 830 S.W.2d 94, 103 (Tex.1992) (referring to *Carpenter v. Barner*, 797 S.W.2d 99, 101 (Tex.App.—Waco 1990, writ denied) and *Pierson v. Indep. School Dist.*, 698 S.W.2d 377, 381 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.)).

As President, it is my responsibility to advise the Faculty Senate of potential problems, and I hope that this memo is taken in the friendly spirit that it is offered.

■ We find sufficient evidence in the record to show that Frank Judd, at all relevant times, acted in good faith and within the scope of his authority as a state employee. The evidence reflects that Judd was appointed by President Nevarez as a member of the Hearing Tribunal, that he served on the Faculty Senate in 1990 and 1991, that he abstained from voting at the September 19, 1990 Faculty Senate meeting at issue, and that he refused to comment on all matters relating to the censure of the appellees. Appellees did not object to the form of Judd's affidavit and did not submit any controverting evidence to raise an issue of fact. Accordingly, we hold that there is no genuine issue of material fact precluding summary judgment in favor of appellant Frank Judd on the basis of official immunity and sustain his sole point of error.

■ We find no evidence in the record sufficiently specific to prove that appellants had the authority to censure appellees. The affidavits submitted by the remaining members of the 1990 Faculty Senate are insufficient to establish as a matter of law that they are entitled to the affirmative defense of official immunity. The Faculty Senate Constitution and Bylaws do not specifically authorize the Faculty Senate to censure faculty members. The statement of purpose cited by appellants from the Faculty Handbook is insufficient to prove that the Faculty Senate had the authority to censure faculty members.

■ Appellants' affidavits also lack the necessary factual specificity to prove that appellants' actions, as alleged, were performed in good faith and within the scope of their authority as state employees. Appellants' statement that

> at all times during my service on the Faculty Senate, I acted with the good faith belief that my actions were within the course and scope of my authority as a member of the Faculty Senate [and] I had no reason to believe that any action I took as a member of the Faculty Senate was in violation of any privilege or right protected by law

amounts to a legal conclusion, unsupported by facts. Appellants' summary judgment evidence fails to conclusively prove that the members of the 1990 Faculty Senate had the authority, as state employees, to perform the actions allegedly taken and that they acted in good faith and within the scope of that authority when they voted to censure appellees.

In addition, we find that appellees' summary judgment evidence raises a fact issue of one element of appellants' affirmative defense of official immunity. Vice–Chancellor Duncan's letter of July 8, 1991, and President Nevarez's memorandum of July 18, 1991, clearly show that the Faculty Senate may not have had the *authority* to undertake disciplinary actions such as censure. While this evidence may not have put the members of the 1990 Faculty Senate "on notice" that the Senate had no authority to discuss or recommend censure, it does, nevertheless, raise a fact issue precluding summary judgment.

We hold that a material fact issue exists that precludes the granting of summary judgment on the basis of official immunity for the remaining members of the 1990 Faculty Senate. We, therefore, overrule the sole point of error of appellants, Terry Allison, Victor Alvarado, Pearl Brazier, Carl Carlan, Paula F. Dean, Daniel Dearth, Juanita Garza, A. Virginia Haynie, Layne Jorgensen, James Maloney, Frank Manuella, Hilda Medrano, Christopher Miller, Glynn Morgan, Nancy Moyer, Linda O'Daniel, Jerry Polinard, Thomas Pozorski, Olga Ramirez, and Bruce Wilson.

Appellees further allege that James W. Aldridge, Samuel Freeman, Robert I. Lonard, and D. Chad Richardson were visitors to the September 1990 Faculty Senate meeting and made defamatory comments "of the same nature and to the same extent" as those who voted for the censure. Appellees also complain that Freeman, along with seven members of the Faculty Senate,[6] made allegedly false and defamatory statements about the appellees during Faculty Senate meetings held on October 31, 1990 and January 23, 1991.

---

**6.** Jorgensen, Miller, Maloney, Moyer, Polinard, Pozorski, and Wilson.

Appellants contend that appellees' allegations against Aldridge, Freeman, Lonard, and Richardson are unsupported by the minutes of the Faculty Senate meetings. The minutes of the September 19, 1990 Faculty Senate meeting do not reflect that Richardson was a visitor or that he made any defamatory statements against appellees, as alleged.

Our review, however, is limited. We only address the issue of official immunity raised by appellants in their motion for summary judgment.

■ Freeman's affidavit is virtually identical to the affidavits of the 1990 Faculty Senate members which we discussed above. Freeman's affidavit of May 1990 states that he had been an employee of UTPA since August 1980 and that, as of the date of the affidavit, he was a member of the Faculty Senate. The affidavit includes the statement of purpose from the Faculty Handbook and the concluding paragraph. Freeman's affidavit also lacks the necessary factual specificity to prove that his actions were authorized and performed in good faith and within the scope of his authority as a state employee. The record reflects that he attended the September 19, 1990 meeting as a visitor. Freeman's affidavit does not state what comments, if any, he made at this meeting or at the October 31, 1990 and January 23, 1991 meetings. Nor does it state specifically how making these alleged defamatory statements falls within the scope of his authority as a state employee.

Without such factual specificity, the affiant's general assertion that "at all times" he "acted with the good faith belief" that his actions were within the scope of his employment amounts to nothing more than a legal conclusion. Accordingly, Freeman's affidavit fails as proof that he had the authority to make these alleged statements, and that he acted in good faith and within the scope of that authority. We hold that Freeman failed to prove as a matter of law that he is entitled to official immunity.

The record reflects that both Robert Lonard and D. Chad Richardson served as members of the FSIC. Appellees sued Lonard and Richardson for defamation and tortious interference. Appellees alleged no specific complaint against Lonard and Richardson relating to their service on the FSIC, but generally contend that Lonard and Richardson participated in the alleged defamation and tortious interference of appellees "on the date stated above and at other times and places in the year prior to September 19, 1990." It appears that appellees' tortious interference claim is based on the related investigation conducted by the Faculty Senate before it voted to censure appellees. Appellees do not allege that the members of the FSIC lacked authority to investigate the MIC's activities or that they acted inappropriately. Appellees do not allege specific actions taken by the FSIC as a basis for their defamation or tortious interference claims.

■ Richardson's affidavit states as follows:

I have been employed as a faculty member at the University of Texas—Pan American in Edinburg, Texas, from September 1977 to the present (with leave-of-absence from July 1985 to July 1988). At no time since 1981 have I served on the Faculty Senate at Pan American University, though I served on the Faculty Senate Investigating Committee from 1989 to 1990, at the request of the President of the Faculty Senate, Dr. David Alvirez.

At all times during my employment at the University of Texas—Pan American (formerly Pan American University), I acted with the good faith belief that my actions were within the course and scope of my employment as a faculty member of said University. At all times during my employment at Pan American University, I have had no reason to believe that any action I took was in violation of any privilege or right protected by law.

Richardson's affidavit establishes 1) that he was not a voting member of the 1990 Faculty Senate, 2) that he did not participate in the censuring of appellees, and 3) that his service on the FSIC during the previous year was performed at the request of the president of the Faculty Senate. Unlike Judd, Richardson fails to state that he made no comments

and that he was authorized by the university to serve on the FSIC. The fact that he served on the FSIC at the request of the Faculty Senate president is insufficient to show as a matter of law that he had the authority as a state employee to perform and that he acted in good faith within the scope of such authority. We hold that Richardson's affidavit lacks factual specificity and does not establish as a matter of law that Richardson is entitled to official immunity.

We find that the affidavit of Robert Lonard is even less specific. Lonard's affidavit states that he has been an employee of the university since September 1, 1979, and then concludes with the following:

> At all times during my employment with The University of Texas—Pan American, I acted with the good faith belief that my actions were within the course and scope of my employment as a faculty member of The University of Texas—Pan American. At all times during my employment at The University of Texas—Pan American, I have had no reason to believe that any action I took was in violation of any privilege or right protected by law.

Appellants contend that Lonard was simply a visitor at the Faculty Senate meeting and that his particular statements, if any, were made within the scope of his employment. Lonard's affidavit fails to address these contentions. Lonard's affidavit also fails to address appellees' allegations of tortious interference. Lonard served as a member of the FSIC during the period in question. The affidavit lacks the necessary factual specificity to prove that he was authorized by the university to act as he did and that his performance fell within the scope of that authority. Without such supporting facts, Lonard's final statement amounts to nothing more than a legal conclusion, insufficient to establish as a matter of law that he is entitled to official immunity.

We hold that the affidavits of Freeman, Lonard and Richardson are not sufficiently

specific to prove as a matter of law that their actions, if any, were authorized by the university, performed in good faith, and within the scope of their authority as state employees. We overrule the sole point of error of appellants, Samuel Freeman, Robert I. Lonard and D. Chad Richardson.

Appellees allege that James Aldridge, Charles Ellard, Nancy Moyer,[7] and Jerry Polinard made defamatory or derogatory statements in memoranda circulated to members of the faculty or in releases to the local newspapers. Copies of the correspondence and newspaper articles in question were attached as summary judgment evidence. Moyer and Polinard were members of the 1990 Faculty Senate. Moyer and Polinard are not entitled to summary judgment for the reasons discussed above.

The record reflects that James Aldridge, Secretary–Treasurer of the Texas Faculty Association, was a visitor to the September 19, 1990 Faculty Senate meeting. Aldridge made certain statements concerning the Faculty Senate reprimand and censure to a local newspaper. Appellants contend that Aldridge's statements were not false and were merely expressions of opinion.

Charles Ellard was one of two faculty members charged by the MIC and later found not guilty by the Hearing Tribunal. Ellard was also a member of the 1989 Faculty Senate. Ellard, as Chair of the Accounting and Economics Department, sent a memo on April 1, 1991, to Mike Crews, Chairman of Management for the university, which contained allegedly defamatory remarks about appellee Gilbert De Los Santos. Copies of the memo were sent to President Nevarez and Dean Brewerton. Appellants contend 1) that the memo was not published, 2) that it expressed Ellard's opinion, 3) that it did not concern the facts of this lawsuit, and 4) that it did not contain defamatory statements about De Los Santos. Appellants also argue that Ellard's memo was written in response

---

7. Appellees allege that on or about April 22, 1991, Nancy Moyer, Chair of the 1991 Faculty Senate, sent a memorandum to appellee De Los Santos which further defamed appellees by "rediscussing and republishing" the defamatory statements related to the censure, and that the

memo was published to the members of the Faculty Senate and Dr. Ellard. Appellants contend that Moyer's memo was a response to a request from De Los Santos that the Faculty Senate rescind the censure.

to a memo from De Los Santos and that it only concerned his evaluation of committee work which Ellard undertook as a faculty member. Both Ellard and Aldridge contend that they are entitled to official immunity from suit and rely on their affidavits as summary judgment proof.

The record contains two affidavits offered by James Aldridge. The first affidavit states as follows:

I have been employed as a faculty member at the University of Texas—Pan American from 1977 to the present. I was not serving on the Faculty Senate at any time that actions or discussions regarding any of the Plaintiffs occurred.

At all times during my employment with The University of Texas—Pan American, I acted with the good faith belief that my actions were within the course and scope of my employment as a faculty member of The University of Texas—Pan American. At all times during my employment at The University of Texas—Pan American, I have no reason to believe that any action I took was in violation of any privilege or right protected by law.

The second affidavit states as follows:

I have read Plaintiffs' Petition in the action styled as *De Los Santos, et al. v. Aldridge, et al.* To the extent that I made any statements about Plaintiffs which Plaintiffs allege in their Petition are defamatory, such statements were not false, and I did not act with reckless disregard as to their truth or falsity. Any such statements merely reflected my opinion on the matters asserted.

Furthermore, any statements I made concerned a subject of public interest, as well as a subject with respect to which I was personally interested and had a duty to perform. I owed this duty to perform to the rest of the faculty and administration who owed a corresponding duty to oversee intrafaculty affairs.

Aldridge's first affidavit states only legal conclusions unsupported by facts. Aldridge does not provide specific facts to show as a matter of law that he had the authority to make the statements which he made and that his actions were within the scope of his authority. Aldridge's second affidavit is clearly an attempt to prove appellants' general assertions of "truth" and "expressions of opinion" as absolute defenses to appellees' defamation claims. Without supporting facts showing the particular statements he made and under what authority or "duty to perform" they were given to the local newspaper, Aldridge's second affidavit amounts to nothing more than a conclusory declaration. The evidence is therefore insufficient to prove Aldridge's entitlement to official immunity as a matter of law. James W. Aldridge's sole point of error is overruled.

Ellard's affidavit states that he has been employed as a faculty member at the university from September 1976 to the present, and that for several years in the early 1980's and most recently from January 1989 until December 1989 he served on the Faculty Senate. His affidavit contains the provision from the Faculty Handbook and states, generally, that at all times during his service on the Faculty Senate and during his employment at the university he acted with the good faith belief that his actions were within the scope of his authority as a faculty member and a member of the Faculty Senate. Ellard's affidavit lacks the necessary factual specificity to prove that his actions were authorized and performed in good faith and within the scope of his authority as a state employee. Ellard's affidavit is clearly insufficient to prove that he is entitled to official immunity as a matter of law. Charles Ellard's sole point of error is overruled.

David Alvirez, Gerald Brazier, Gilbert Cardenas, Joseph Chance, Rumaldo Juarez, Emily McCormick, Hubert Miller, Kevin Morse, Gary Mounce, Lester Rydl, and Charles Strong were sued for tortious interference with contractual relations. Appellees allege that these individuals

were aware of the long-standing relationship between UTPA [and plaintiffs], and by their interference on the date stated above and at other times and places *in the year prior to September 19, 1990*, interfered with the *contractual relationship of the Plaintiffs*. [emphasis added].

Appellants contend that appellees asserted no facts and made no specific allegations against G. Brazier, Cardenas, Chance, Juarez, McCormick, Miller, Morse, Mounce, Richardson, Rydl, and Strong which would place them outside the protection of official immunity. Appellants argue that all claims against these individuals should be dismissed.

Alvirez, McCormick, Morse, and Mounce were members of the Faculty Senate either before or immediately after 1990. According to their respective affidavits, (1) Alvirez served on the Faculty Senate from 1987 to 1989, (2) McCormick served on the Faculty Senate from January 1986 to January 1990, (3) Morse served on the Faculty Senate from January 1986 to December 1989, and (4) Mounce began serving on the Faculty Senate in January 1991. Juarez served on the Faculty Senate from January 1988 to December 1990. These appellants' affidavits are virtually identical to the affidavits filed by the 1990 Faculty Senate members. Each affidavit contains the statement of purpose from the Faculty Handbook and concludes with the following statement:

> At all times during my service on the Faculty Senate, I acted with the good faith belief that my actions were within the course and scope of my authority as a member of the Faculty Senate. I have no reason to believe that any action I took as a member of the Faculty Senate was in violation of any privilege or right protected by law.

These appellants were not sued for defamation. It appears that these members of the Faculty Senate did not participate in the vote to censure appellees.

Juarez, a member of the 1990 Faculty Senate, was apparently not present to vote for censure. Juarez's affidavit, however, lacks the necessary factual specificity to prove that his actions, as alleged, were authorized and that they were performed in good faith and within the scope of his authority as a state employee. The affidavit amounts to nothing more than a legal conclusion and is insufficient to establish that Juarez is entitled to official immunity as a matter of law. This is determinative notwithstanding appellees' overly broad allegation of tortious interference. Accordingly, Rumaldo Juarez's sole point of error is overruled.

Similarly, the affidavits of Alvirez, McCormick, Morse and Mounce lack the necessary factual specificity to prove that their actions, as alleged, were authorized and that they were performed in good faith and within the scope of their authority as state employees. The affidavits amount to nothing more than legal conclusions and are insufficient to establish that Alvirez, McCormick, Morse and Mounce are entitled to official immunity as a matter of law. We overrule the sole point of error of appellants, David Alvirez, Emily McCormick, Kevin Morse and Gary Mounce.

Gerald Brazier's affidavit states that he was employed as a faculty member by the university from 1981 to 1990, but that during that time he did not serve in the Faculty Senate. The affidavit contains no other factual statement. Joseph Chance's affidavit states as follows:

> I have been employed as a faculty member at Pan American University in Edinburg, Texas, from 1969 to the present. I have not served on the Faculty Senate during my employment with Pan American University after the year of 1983.

Lester Rydl's affidavit states as follows:

> I have been employed as a faculty member at Pan American University, Texas, from 1973 to the present. At no time during my employment with Pan American University have I ever served on the Faculty Senate.

Charles Strong's affidavit states as follows:

> I have been employed as a faculty member at Pan American University, Texas, from June 1, 1973 to the present. At no time during my employment with Pan American University have I ever served on the Faculty Senate.

The record reflects that Strong was a visitor to the August 30, October 4, November 1, and November 29, 1989 Faculty Senate meetings. The affidavits of G. Brazier, Chance, Rydl and Strong all conclude with the following statement:

> At all times during my employment at Pan American University, I acted with the good faith belief that my actions were within the course and scope of my employment as a

faculty member of Pan American University. At all times during my employment at Pan American University, I have had no reason to believe that any action I took was in violation of any privilege or right protected by law.

We hold that the affidavits of G. Brazier, Chance, Rydl, and Strong lack the necessary factual specificity to prove that their actions, as alleged, were authorized and that they were performed in good faith and within the scope of their authority as state employees. The affidavits amount to nothing more than a legal conclusion and are insufficient to establish that G. Brazier, Chance, Rydl, and Strong are entitled to official immunity as a matter of law. Accordingly, the sole point of error of appellants Gerald Brazier, Joseph Chance, Lester Rydl, and Charles Strong is overruled.

The evidence reflects that Hubert Miller served as a member of the FSIC.[8] H. Miller's affidavit states as follows:

I have been employed as a faculty member at the University of Texas–Pan American in Edinburg, Texas, from September 1, 1971 to the present. I was not a member of the Faculty Senate during the time period in question; however, I was a member of the Faculty Senate Investigating Committee (FSIC).

The affidavit then concludes with the same paragraph found in the affidavits of G. Brazier, Chance, Rydl and Strong. Although H. Miller's affidavit, unlike the affidavit of Kevin Morse, states that H. Miller was a member of the FSIC, it also lacks the necessary factual specificity to prove that his actions, as alleged, were authorized and that they were performed in good faith and within the scope of his authority as a state employee. The affidavit amounts to nothing more than a legal conclusion and is insufficient to establish that he is entitled to official immunity as a matter of law. Hubert Miller's sole point of error is overruled.

The record reflects that Gilbert Cardenas was a visitor to the Faculty Senate meeting of September 19, 1990, and that he never served in the Faculty Senate. The record, however, does not include an affidavit from Cardenas. We hold that the evidence is insufficient to establish that Cardenas is entitled to official immunity as a matter of law. We overrule Gilbert Cardenas' sole point of error.

We REVERSE the trial court's order denying the motion for summary judgment of Frank Judd and RENDER judgment in Judd's favor. We AFFIRM the trial court's order denying the motion for summary judgment of James W. Aldridge, Terry Allison, Victor Alvarado, David Alvirez, Gerald Brazier, Pearl Brazier, Gilbert Cardenas, Carl Carlan, Joseph Chance, Paula F. Dean, Daniel Dearth, Charles Ellard, Samuel Freeman, Juanita Garza, A. Virginia Haynie, Layne Jorgensen, Rumaldo Juarez, Robert I. Lonard, James Maloney, Frank Manuella, Emily McCormick, Hilda Medrano, Christopher Miller, Hubert Miller, Glynn Morgan, Kevin Morse, Gary Mounce, Nancy Moyer, Linda O'Daniel, Jerry Polinard, Thomas Pozorski, Olga Ramirez, D. Chad Richardson, Lester Rydl, Charles Strong, and Bruce Wilson.

---

8. The members of the FSIC included Miller, Morse, Lonard and Richardson. Richardson and Lonard were sued for defamation and tortious interference. Miller and Morse were only sued for tortious interference.