# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs March 6, 2007

## STATE OF TENNESSEE v. WILLIAM T. UTLEY

**Appeal from the Circuit Court for Chester County**
**No. 04-281     Donald Allen, Judge**

_____

**No. W2006-01486-CCA-R3-CD  - Filed May 23, 2007**

_____

The Appellant, William T. Utley, was convicted by a Chester County jury of the Class D felonies of burglary and theft of property over $1000. Following a sentencing hearing, the trial court imposed concurrent four-year sentences of incarceration for each conviction. On appeal, Utley has raised three issues for our review: (1) whether the evidence is sufficient to support the convictions; (2) whether the trial court erred by failing to instruct the jury on voluntary intoxication; and (3) whether the court erred in denying alternative sentencing. Following review of the record, we find no error and affirm the judgments of conviction and resulting sentences.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Brett B. Stein, Memphis, Tennessee, for the Appellant, William T. Utley.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

At approximately 2:45 a.m., on August 4, 2004, Officer Jason Rhodes of the Henderson Police Department was on routine patrol when he saw a short black male wearing dark clothing attempting to push a dolly across East Main Street. Rhodes pulled into the Big Star parking lot to investigate, and he saw the person back the dolly up behind a nearby sign. At that point, Rhodes lost sight of the man. However, seconds later, he observed the man running west on Main Street. Rhodes pursued in his patrol car, and he observed the male running down Old Jacks Creek Road prior to losing sight of him again. Rhodes, who had radioed for assistance, began to search the area

on foot. Approximately three to five minutes after Rhodes had initially seen the man with the dolly, he observed a man, the Appellant, walking towards the dolly, which was still located in the Big Star parking lot. Rhodes noted that the man he approached in the parking lot matched the description of the male he had initially seen with the dolly, although he could not say for sure that it was the same person. Rhodes approached the Appellant and asked what he was doing in the area. The Appellant responded that he was jogging, although it was 2:45 in the morning, and he was wearing jeans and hard-soled shoes and had a strong odor of alcohol about him. Rhodes noted that the Appellant was out of breath and perspiring and that his shoes had grass clippings on them. No one else was seen in the area on foot. The Appellant further advised the officer that he had drunk several beers earlier in the evening. Based upon the fact that the Appellant appeared intoxicated, Rhodes arrested him for public intoxication.

Rhodes then proceeded to inspect the dolly, which was still located behind the sign. On the dolly, he discovered a safe and a plastic garbage bag, which were both attached to the dolly with red tape. Officer Jerry Stansell, who had responded to the radio call for assistance, began checking surrounding businesses to determine if they had been burglarized. During his investigation, he discovered that the back door of the Dollar General, which was located on the opposite end of the Big Star parking lot, had been entered.

The investigation revealed that the back door, which had been sprayed with paint and liquid wrench, was damaged, and several items of merchandise had been destroyed. The office area had also sustained damage, and the manager confirmed that the safe was missing. The manager later identified the safe, found on the dolly, which also belonged to the store, as the missing safe. Additionally, it was determined that the items contained in the garbage bag found on the dolly were also merchandise which had been removed from the store. Those items included clothes, shoes, socks, DVDs, belts, a hammer, gloves, cigarette lighters, cough syrup, batteries, steel wool, and various food items. The store manager valued the items in the bag at $258. He further noted that the safe and the back door, which both had to be replaced, cost $245 and $395 respectively. When the safe was removed from the store, it contained over $5000 in checks and cash, all of which was recovered when the safe was returned to the store.

Investigator Faulkner processed the crime scene and collected evidence. He sent a paint can, along with the tape used to secure the safe and bag to the dolly, to the crime lab for fingerprint comparison. No prints were found on the can, but two latent prints were found on the tape. However, the examiner was unable to make any conclusive identification because the fingerprint card containing the Appellant's prints did not show the area of the hand necessary for comparison well enough to be used for identification.

The Appellant was subsequently indicted by a Chester County grand jury for Class D felony burglary, Class D felony theft of property over $1000, and Class C misdemeanor public

intoxication.[1]  At trial, the Appellant testified that he did not commit the burglary or theft of the Dollar General and that he was not intoxicated at the time of his arrest.  He maintained that he had simply left his uncle's home and gone for a jog.  The Appellant was found guilty of the burglary and theft offenses but not guilty of public intoxication.  A sentencing hearing was subsequently held, after which the trial court sentenced the Appellant to concurrent four-year sentences for each offense. The court also ordered that the sentences be served in the Department of Correction.  Following the denial of his motion for new trial, the Appellant filed the instant timely appeal.

**Analysis**

On appeal, the Appellant has raised three issues for our review: (1) whether the evidence is sufficient to support the convictions for burglary and theft of property; (2) whether the court erred in not instructing the jury on voluntary intoxication; and (3) whether the court erred in denying the Appellant an alternative sentence.

## I.  Sufficiency of the Evidence

In considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e).  Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992).  All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact.  *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).  This court will not reweigh or reevaluate the evidence presented.  *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973).  A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient.  *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).  These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both.  *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Although a conviction may be based entirely upon circumstantial evidence, *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1974), in such cases, the facts must be "so clearly interwoven and

---

[1]We are constrained to note that a copy of the indictment has not been included in the record before us. While we are able to ascertain the indicted offenses from other parts of the records, the indictments are an integral part of any direct appeal of a conviction and, as such, should have been included in the appellate record.

connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991) (citing *State v. Duncan*, 698 S.W.2d 63 (Tenn. 1985)). However, as in the case of direct evidence, the weight to be given circumstantial evidence and "the inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958) (citations omitted).

As noted the Appellant was convicted of Class D felony burglary and Class D felony theft of property over $1000. In order to prove the crime of burglary, as indicted in this case, the State was required to establish that a person, without the effective consent of the property owner:

> (1) Enters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault;

T.C.A. § 39-14-402(a)(1) (2006). Theft of property is committed when "[a] person . . . , with intent to deprive the owner of property, . . . knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103 (2006).

On appeal, the Appellant challenges the sufficiency of the evidence upon the ground that any evidence establishing his identity as the perpetrator of the crime was "purely circumstantial." In support of his argument, the Appellant relies upon the fact that Officer Rhodes was unable to positively identify him as the person that he had seen initially seen pushing the dolly, only testifying that the Appellant matched the description. He also points to the facts that he did not attempt to flee when approached by the officer in the parking lot and that no fingerprint evidence was found positively linking him to the crime.

The Appellant's argument is without merit. It is undisputed that both a burglary and theft were committed on the morning in question. Officers observed the broken door of the Dollar General, which was closed to the public at that time in the morning, and found merchandise inside the building scattered and destroyed. Moreover, the manger of the store testified that the safe, which contained over $5000, and several items of merchandise were removed from the store without permission. Both the safe and a garbage bag containing merchandise were found on a dolly in the parking lot outside the store. The manager testified that, in addition to a day of lost revenue because of the burglary, the store had to purchase a new safe and rear entrance door.

The Appellant's argument challenges only the proof with regard to the establishment of his identity as the perpetrator. However, viewing the evidence presented in the light most favorable to the State, the proof was more than sufficient to establish that it was in fact the Appellant who committed the crimes. A black male, matching the Appellant's description, was seen pushing the dolly containing the stolen merchandise and the safe at approximately 2:45 a.m. Upon seeing the police car, the black man hid the dolly and fled in the opposite direction. Approximately three to five minutes later, after pursuing the man on foot, Officer Rhodes encountered the Appellant in the Big Star parking lot walking toward the dolly. The Appellant stated that he had been jogging,

although he was clearly not attired for that activity. Additionally, officers testified that they saw no one else in the area on foot matching the description of the man seen with the dolly. The fact that no fingerprint evidence conclusively tied the Appellant to the crime scene is not determinative in this case, as the fingerprint examiner testified that the results were inconclusive because the Appellant's fingerprint card did not contain the area of the hand needed to compare the prints.

While the evidence supporting the Appellant's identity as the perpetrator is circumstantial, the facts are "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *Black*, 815 S.W.2d at 175. The jury listened to the evidence presented, including the Appellant's assertions that he did not commit the crimes, and weighed the credibility of the witnesses. Obviously, from their verdict, the jury found that the Appellant's testimony was not credible. Our review reveals that the evidence presented was sufficient to allow a rational juror to conclude that the Appellant was guilty of the crimes beyond a reasonable doubt.

## II. Voluntary Intoxication Instruction

Next, the Appellant contends that the trial court erred by "failing to instruct the jury as to the law of intoxication." According to the Appellant, the charge was warranted as Officer Rhodes smelled alcohol on the Appellant's breath and arrested him for public intoxication. Thus, he argues that intoxication was legitimately raised by the proof presented. He further argues that the instruction was necessary because it bore on his ability to form the specific intent required to commit the crimes.

It is fundamental that the trial court has a duty "to give a complete charge of the law applicable to the facts of a case." *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986); *see also* Tenn. R. Crim. P. 30. Jury instructions must, however, be reviewed in the context of the overall charge rather than in isolation. *Sandstrom v. Montana*, 442 U.S. 510, 527, 99 S. Ct. 2450, 2461 (1979); *see also State v. Phipps*, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). A charge is prejudicial error only "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997). Because questions of the propriety of jury instructions are mixed questions of law and fact, the standard of review is *de novo* with no presumption of correctness. *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001).

On appeal, the Appellant argues that the pattern instruction on voluntary intoxication, T.P.I. 40.02, should have been submitted to the jury for both burglary and theft of property. However, Tennessee Code Annotated section 39-11-503(b) (2006) expressly provides that an intoxication instruction should not be given when recklessness is sufficient to establish the culpable mental state of the crime charged. Thus, because burglary may be committed "recklessly," an intoxication instruction for this crime would have been improper. *See* T.C.A. § 39-14-402 (2006); T.C.A. § 39-11-301(c) (2006).

With regard to the theft conviction, we note that this court has held that the trial court is required to "instruct the jury on those principles closely and openly connected with the facts before

the court and which are necessary for the jury's understanding of the case." *State v. Elder*, 982 S.W.2d 871, 876 (Tenn. Crim. App. 1998). First, in this case, no evidence was presented at trial with regard to any effect that alcohol consumption had with respect to the Appellant's ability to form the requisite intent to commit theft. *See State v. Harrell*, 593 S.W.2d 664, 672 (Tenn. Crim. App. 1979) (In order for a defendant to rely upon voluntary intoxication as a defense, "[t]he determinative question is not whether [he] was intoxicated, but what was his mental capacity."). Indeed, the proof established that the Appellant had the mental presence and ability to break into a building and, after removing numerous items of merchandise and a safe from the store, flee when approached by police. Second, an intoxication instruction was "[un]connected with the facts" of the case and not "necessary for the jury's understanding," as the Appellant defended upon grounds that he was not the perpetrator of the theft. Thus, an intoxication defense, which in effect concedes the actus reus of the crime but denies the mens rea element, would have been inconsistent with the defense theory and unwarranted under the evidence. Thus, we find no error in the court's failure to charge the instruction.

### III. Alternative Sentencing

Finally, the Appellant contends that the trial court erred by failing to sentence him to community corrections or another form of alternative sentencing. When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2006); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby,* 823 S.W.2d at 169.

When conducting a *de novo* review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and sentencing hearings; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statements made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. T.C.A. § 40-35-102, -103, -210 (2006); *State v. Brewer*, 878 S.W.2d 298, 302 (Tenn. Crim. App. 1993). Furthermore, we emphasize that facts relevant to sentencing must be established by a preponderance of the evidence and not beyond a reasonable doubt. *State v. Winfield,* 23 S.W.3d 279, 283 (Tenn. 2000)(citing *State v. Poole*, 945 S.W.2d 93, 96 (Tenn. 1997)). If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact that are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. *State v. Pike,* 978 S.W.2d 904, 926-27 (Tenn. 1998); *State v. Fletcher,* 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The appealing party bears the burden of showing that the sentence is improper. T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001).

A defendant "who is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6). Guidance as to what constitutes "evidence to the contrary" is found in Tennessee Code Annotated section 40-35-103(1), which sets forth the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C). In this case, the Appellant was convicted of Class D felonies and sentenced as a standard offender; thus, the presumption in favor of alternative sentencing does apply.

On appeal, the Appellant argues that he should have received a community corrections sentence based upon his "history of chronic alcohol abuse." However,

a determination that the [A]ppellant is *suitable* for placement in the [community corrections] program [under the special needs section] . . . requires the following findings of fact: (1) the offender has a history of chronic alcohol, drug abuse, or mental health problems, (2) these factors were reasonably related to and contributed to the offender's criminal conduct, (3) the identifiable special need (or needs) are treatable, and (4) the treatment of the special need could be served best in the community rather than in a correctional institution.

*State v. Boston*, 938 S.W.2d 435, 439 (Tenn. Crim. App. 1996). At trial, the Appellant denied that he was intoxicated on the date of the crimes. Moreover, at sentencing, no evidence was introduced with regard to any of the four above criteria. Thus, the Appellant's argument is without merit.

In denying all alternative sentencing options, the trial court found as follows:

. . . the Court finds that in this particular case that measures less restrictive than confinement have been recently and frequently been applied to [the Appellant] without success. Again, as I mentioned, on at least five different occasions by my calculations, [the Appellant] had been placed on probation and every time he's been placed on probation, he's got out and committed new offenses, although misdemeanors, they're still new offenses committed while on probation. It just appears to the Court that [the Appellant] just simply can't make it on probation. He

can't follow the rules. He can't stop committing crimes based upon his history. Also the Court finds that confinement in this case is necessary to protect society from a defendant with along [sic] history of criminal record. Again, I'm talking about 13 prior misdemeanor convictions which he has committed. The Court does not find that he is an appropriate candidate for probation. He's not an appropriate candidate for Community Corrections or any other type of alternative sentencing. He will be ordered to serve these sentences in the Tennessee Department of Corrections.

Our review of the record indicates that the trial court correctly denied an alternative sentence. The pre-sentence report indicates that the Appellant has previously been convicted of four DUI offenses, three driving with a revoked license offenses, two misdemeanor assault offenses, a violation of the open container law, resisting arrest, simple possession of marijuana, and a weapons offense. Additionally, as the trial court found, the Appellant has been placed on probation numerous times and has violated the terms of his probation by committing new offenses. Accordingly, the record before us amply supports the trial court's findings that measures less restrictive than confinement have previously been applied unsuccessfully to the Appellant and that confinement is necessary to protect society from an appellant who has a long history of criminal conduct, either of which is sufficient to establish "evidence to the contrary" in order to rebut the presumption in favor of alternative sentencing.

## CONCLUSION

Based upon the foregoing, the Appellant's judgments of conviction and resulting sentences are affirmed.

_____
DAVID G. HAYES, JUDGE