COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

                                                                              )     

EL PASO
COUNTY, TEXAS                              )                    No. 
08-02-00100-CV

                                                                              )

Appellant,                          )                             Appeal from

                                                                              )     

v.                                                                           )                 County Court at Law No. 5

                                                                              )

RUBEN MAYNES and FRANCES
MAYNES,   )                   of El Paso
County, Texas

Individually and on behalf
of their minor                  )

children,
JACOB MAYNES,                                 )                            
(TC# 99-248)

KIMBERLY MAYNES, RUBY
MAYNES,         )

and
RUBEN MAYNES,                                        )

                                                                              )

Appellees.                          )

 

O
P I N I O N

 

Ruben
Maynes and his wife Frances, individually and on
behalf of their four minor children, filed suit against Ronald Nanos, the City of El Paso, and El Paso County, Texas to
recover damages as a result of an automobile-pedestrian accident.  In this appeal, the County challenges the
denial of its plea to the jurisdiction. 
We reverse and render.

FACTUAL SUMMARY








Ruben
Maynes was severely injured on the night of July 26,
1997, when he was struck by a vehicle as he stood in the middle of the
street.  After attending the Dallas
Cowboys=
scrimmage game at the University of Texas at El Paso (UTEP), Ruben went to the
Tequila Bar on Dyer Street.  Around
midnight, his wife Frances arrived to pick him up.  The couple left together, began arguing, and
drove around instead of returning directly to their home.  A few blocks away from the bar, Ruben asked
Frances to pull over as he needed to vomit. 
Afterward, he told Frances that he would walk home and he headed toward
Dyer Street, just a short distance away. 
Frances got out of the van and tried to follow her husband, but she was
not able to catch up to him.  Ruben
turned south on Dyer, the opposite direction of his home.  He then crossed the southbound lanes of
traffic and walked down the median toward the Lobby Bar.  Frances chased after him, lagging about
twenty steps behind.  She continued to
yell at him and tried to convince him to return to the van.  At some point, Ruben yelled back, telling
Frances to AGo home.  I=m leaving
you.@  Frances turned toward the car.  Ruben continued to argue with his wife and
repeatedly stopped as he attempted to cross the street.  A witness claimed that Ruben was almost hit
by another car as he crossed Dyer Street but it was able to avoid him.  As Ruben crossed the center lane, he stopped
again for a few seconds to yell at Francis as she walked away.  Just after Frances headed for the van, she
heard the accident.  Ruben was struck by
a vehicle driven by Ronald Nanos, an El Paso County
Sheriff=s
Detective.  As a result of the accident,
Ruben=s  right leg was
amputated below the knee.








Ronald
Nanos was employed by both the County and the City
pursuant to an inter-local agreement creating a joint auto theft prevention
task force.[1]  On the night of the accident, he had worked
security for UTEP during the Cowboys=
scrimmage.  He had not reported to work
that day at the task force headquarters, nor was he assigned to work at another
site.  His supervisor described Saturday
as Ahis regularly scheduled day off.@ 
At the time of the accident, Nanos was not
responding to a call.  Instead, he was en
route from his home to his brother=s
house.  He was driving an unmarked police
car provided by the City which was to be used only for the performance of his
duties with the task force.  Nanos claimed that intended to discuss with his brother a
sting operation to be conducted the next morning.  Nanos=s brother was a former member of
the task force but he was not involved in the ongoing sting operation.  The strategy for the operation had already
been planned and Nanos had been thoroughly briefed on
procedures by his supervisor.  Nanos=s
decision to discuss task force business with his brother was in violation of
task force policy and protocol.

Nanos testified that he believed he was within the course
and scope of his employment when he left his house.  His supervisor disagreed with that
assessment, testifying that Nanos did not have
permission to use the vehicle for personal travel and only had authority to
drive the vehicle to and from work at the task force headquarters or to the
scene of an assignment.        

STANDARD OF REVIEW

Governmental
immunity from suit defeats a trial court=s
subject matter jurisdiction.  See
Texas Dept. of Transportation v. Jones, 8 S.W.3d 636, 639 (Tex. 1999); Lamar
University v. Doe, 971 S.W.2d 191, 195 (Tex.App.--Beaumont
1998, no pet.).  Whether a trial court
has subject-matter jurisdiction is a question of law subject to de novo
review.  See Mayhew v. Town of
Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998), cert. denied, 526 U.S.
1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999).  The absence of subject matter jurisdiction
may be raised by a plea to the jurisdiction or by motion for summary judgment.  Bland Independent School
Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000).  The County raised its challenge via a plea to
the jurisdiction.

NATURE OF A PLEA TO THE JURISDICTION








A
plea to the jurisdiction is a dilatory plea designed to defeat a cause of
action without regard to whether the underlying claim has merit.  Blue, 34 S.W.3d at 554.  The purpose of the plea is not to force the
plaintiffs to preview their case on the merits but to establish a reason why
the merits should never be reached.  Id.  The plaintiff has the burden to allege facts
that affirmatively demonstrate that the trial court has subject matter
jurisdiction.  Texas
Ass=n of Business v. Texas Air Control
Board, 852 S.W.2d 440, 446 (Tex. 1993).  In the context of suit against a governmental
unit, the plaintiff must allege consent to suit either by reference to statute
or express legislative permission.  Jones, 8 S.W.3d at 638; Missouri Pacific Railroad Company
v. Brownsville Navigation District, 453 S.W.2d 812, 813 (Tex. 1970).  Immunity from liability and immunity from
suit are two distinct principles. 
Immunity from liability protects the State from judgment even if the
Legislature has expressly consented to the suit.  Jones, 8 S.W.3d at
638; Federal Sign v. Texas Southern University, 951 S.W.2d 401, 405
(Tex. 1997).  Like other
affirmative defenses to liability, it must be pled or else it is waived.  Jones, 8 S.W.3d at 638; see Tex.R.Civ.P.
94.  Immunity from liability does not
affect a court=s
jurisdiction to hear a case.  In
contrast, immunity from suit bars an action against the State unless the State
expressly consents to the suit.  Federal
Sign, 951 S.W.2d at 405; Missouri Pacific,
453 S.W.2d at 814.

In
reviewing the trial court=s
denial of a plea, we look first to the allegations in the petition.  This does not mean that evidence may not be
offered on a dilatory plea; indeed the issues raised may be such that they
cannot be resolved without an evidentiary hearing.  Blue, 34 S.W.3d at
554.  Because a court must not act
without determining its subject matter jurisdiction, it should hear evidence as
necessary to determine the issue before proceeding with the case.  Id. 
In other words, a court deciding a plea to the jurisdiction is not
required to look solely to the pleadings but may consider evidence and must
do so when necessary to resolve the jurisdictional issues raised.  Id. at 555. 








SOVEREIGN IMMUNITY UNDER THE TEXAS TORT CLAIMS ACT

In
its sole point on appeal, the County argues that the Maynes= cause of action does not fall within
the limited waiver of the Texas Tort Claims Act.  Tex.Civ.Prac.&Rem.Code, '
101.021 (Vernon 2002).  The Act does not
create a cause of action.  City of Tyler v. Likes, 962 S.W.2d 489, 494 (Tex. 1997);
Scott v. Britton, 16 S.W.3d 173 (Tex.App.--Houston
[1st Dist.] 2000, no pet.).   Rather,
it merely waives sovereign immunity allowing the State to be sued under
particular circumstances.  Id.  A municipality such as the County is immune
from liability for its governmental functions unless that immunity is
specifically waived.  City of LaPorte v. Barfield, 898 S.W.2d 288, 291 (Tex. 1995); City
of El Paso v. Hernandez, 16 S.W.3d 409, 414 (Tex.App.--El
Paso 2000, pet. denied); Gonzales v. City of El Paso, 978 S.W.2d 619,
622 (Tex.App.--El Paso 1998, no pet.). 

The Act provides
that a governmental unit in the state is liable for: 

 

(1) property damage, personal injury, and death proximately
caused by the wrongful act or omission or the negligence of an employee acting
within his scope of employment if:

 

(A) the property damage, personal injury, or death arises from
the operation or use of a motor-driven vehicle or motor-driven equipment; and 

 

(B) the employee would be personally liable to the claimant
according to Texas law; and 

(2) personal injury
and death so caused by a condition or use of tangible personal or real property
if the governmental unit would, were it a private person, be liable to the
claimant according to Texas law. 

 








Tex.Civ.Prac.&Rem.Code Ann. '
101.021 (Vernon 1997).  Further, the Act
defines an employee as Aa
person, including an officer or agent, who is in the paid service of a
governmental unit by competent authority, but does not include an independent
contractor, an agent or employee of an independent contractor, or a person who
performs tasks the details of which the governmental unit does not have the
legal right to control.@  Tex.Civ.Prac.&Rem.Code Ann. '
101.001(2).

SCOPE OF AUTHORITY

 For the County to be liable, the Mayneses must show that Nanos met
the following criteria: (1) he was performing a discretionary duty; (2) he was
acting within the scope of his authority; and (3) he was acting in good faith. City
of Lancaster v. Chambers, 
883 S.W.2d 650, 653 (Tex. 1994). 
Police officers, as public servants, are entitled to official immunity
when they are acting within the course and scope of their authority, performing
discretionary functions, and acting in good faith. Bozeman
v. Trevino, 804 S.W.2d 341, 343 (Tex.App.--San
Antonio 1991, no writ).  An
official acts within the scope of his authority if he is discharging the duties
generally assigned to him. Chambers, 883 S.W.2d at 658.  AThe
fact that a specific act that forms the basis of the suit may have been wrongly
or negligently performed does not take it outside of the scope of authority.@ Koerselman v. Rhynard, 875 S.W.2d 347, 350 (Tex.App.--Corpus Christi 1994, no writ); Edgar v.
Plummer, 845 S.W.2d 452, 453 (Tex.App.--Texarkana
1993, no writ).  When a servant
turns aside from the performance of the work for which he was hired, even
though momentarily, and engages in activities not in furtherance of  his master=s
business but to accomplish some purpose of his own, the master is not
responsible.  Texas
& P.Ry.Co. v. Hagenloh,
151 Tex. 191, 202, 247 S.W.2d 236, 242 (1952); Galveston, H. & S. A. Ry. Co. v. Currie, 100 Tex. 136, 142, 96 S.W. 1073,
1074 (1906).

The
Texas Torts Claim Act defines Ascope
of employment@ as
follows:

(5)
>Scope of employment= means the performance for a
governmental unit of the duties of an employee=s
office or employment and includes being in or about the performance of a task
lawfully assigned to an employee by competent authority.








Tex.Civ.Prac.&Rem.Code Ann. '
101.001 (5).  The theory of respondeat superior or vicarious liability is based upon acts
of an employee which fall within the scope of the general authority of the
employee so long as the acts are in furtherance of the employer=s business and for the accomplishment
of the object for which the employee was hired.  Leadon v. Kimbrough Brothers Lumber Company,
484 S.W.2d 567, 569 (Tex. 1972); Langley v. National Lead Co., 666 S.W.2d 343, 345 (Tex.App.--El
Paso 1984, no writ).

The
conduct of an officer in official immunity cases must be measured against a standard
of objective reasonableness without regard to the officer=s subjective state of mind.  Chambers, 883 S.W.2d
at 656; Cobb v. Texas Dep=t of Criminal Justice, 965 S.W.2d
59, 64 (Tex.App.--Houston [1st Dist.] 1998, no writ).  At issue here is whether Nanos
believed in good faith that he was acting within the scope of his employment as
he drove to his brother=s
home on the night of the accident. 
Taking his testimony as true, Nanos had at
best a subjective, not an objective belief. 
Maynes was severely injured when he was struck
by the unmarked City police vehicle.  Nanos was only authorized to use the vehicle while working
on official duties relating to the auto theft prevention task force.  But on the night of the accident, Nanos was not on duty nor had he worked for the task force
that day.  He was not responding to calls
and had not observed any criminal activity;[2]
he was merely driving from his home to his brother=s
house.  His supervisor testified that Nanos did not have permission to use the vehicle for any
personal travel and was not authorized to speak to anyone outside of the task
force about ongoing investigations.  Put
succinctly, the supervisor stated: 








At
no time, on or before the date of the accident, did I direct Defendant Nanos to speak about his cases to any person other than
myself and the officers directly involved in and working for the Task Force.

The
County has established that Nanos was not acting
within the scope of his employment. 
Consequently, the denial of the plea to the jurisdiction was
improper.  We sustain the sole point,
reverse and render judgment in favor of the El Paso County, Texas.

 

 

November 7, 2002

                                                                        


ANN CRAWFORD McCLURE, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)











[1]  Although Nanos worked for the Sheriff=s
Department, he reported daily to the El Paso Police Department, where he
maintained an office.  He was actually
paid by the County.   





[2]  The Mayneses argue alternatively that Nanos
became an on-duty officer at the time he observed Frances Maynes
Atrying to climb a chain-link fence@ which ran down the center of the median.  Nanos testified
that he was curious as to whether Frances was trying to climb the fence, but
that he did Anot immediately@ think Asomething was wrong.@ He
explained that if he observed a crime being committed while he was off-duty, he
would act upon it but if the activity were Asimply
suspicious@, he would call a city dispatcher depending on the
situation.  Nanos
neither acted to prevent a crime nor called a dispatcher to report suspicious
behavior.  Frances Maynes
explained that she became upset when Ruben yelled to say he was going to leave
her.  She put her hands up to her head
and face and leaned momentarily against the fence.