**Steve AUSTIN and Donna Austin, Individually and as Heirs and Beneficiaries of the Estate of Monica M. Austin, Deceased, Appellants,**

**v.**

**John HALE, et al, Appellees.**

**No. 10–85–226–CV.**

Court of Appeals of Texas,
Waco.

April 24, 1986.

Noteboom, Bedford, Jean Bishop, Decatur, for appellants.

F. Scott McCown, Asst. Atty. Gen., Austin, for appellees.

## OPINION

THOMAS, Justice.

This is an appeal from a summary judgment. Donna and Steve Austin, plaintiffs-appellants, sued John Hale, Todd Maslow and the Texas Department of Human Resources (DHR), defendants-appellees, claiming that Hale and Maslow, who are employees of DHR, and DHR were negligent in investigating a report that their two-year-old daughter was being abused while she was living with her aunt and uncle.[1] DHR moved for a summary judgment on the ground of sovereign immunity, and Hale and Maslow moved for a summary judgment based on the defense of official immunity. The court granted the summary judgments. Although the Austins consented to the entry of the summary judgment in favor of DHR, they appeal the summary judgment in favor of Hale and Maslow, claiming that the doctrine of official immunity does not apply in this case. We affirm.

In early May 1982, the Austins left their two-year-old daughter, Monica, with Mrs. Austin's sister, Linda Beggs, and her husband, Dale Beggs, while the Austins "resolved their marital and financial problems." The Beggs' babysitter noticed bruises on Monica and heard the Beggs' children talk about how Dale Beggs had beaten Monica and was "mean to her". The babysitter became concerned that Monica was being abused and reported her concern to an employee of the school system who, in turn, passed on the information to Hale on May 19, 1982. Hale was a specialist in the Children's Protective Services division of DHR, and Maslow was his supervisor.

Hale immediately began an investigation of the report during which he periodically conferred with Maslow about what further action should be taken. The case was classified as a "priority one" report which, under DHR rules, required Hale to investigate the abuse report and to see the child within twenty-four hours after the report was received. Hale contacted the babysitter and visited with Monica at the babysitter's home on May 20, the day after he received the report. He found a bruise on Monica's left buttock and two small ones on her left shin. The babysitter, who told Hale that she was not sure that she should have made the report, stated that she had known the Beggs a long time and had never known them to hurt their own children. Hale then reported the incident to the Sheriff's Office, which did not have any records indicating that Dale Beggs was a child abuser. Hale also received a report from DHR's computer that neither the Beggs nor Monica had ever been the subject of a child-abuse report. On May 20, Hale also visited with Linda and Dale Beggs and the Beggs' children. Linda told Hale that Monica bruised easily and that Dale had spanked her for soiling her pants. The Beggs' children also told Hale that their father had spanked Monica "once, maybe twice". The Beggs told Hale to contact Dr. Kelso, a physician who had seen the bruises on Monica, and also asked Hale to talk with Joy Dollar, who was a family friend, and Dale Beggs' father. Dale Beggs admitted to Hale that he had spanked Monica, but he denied having spanked her "hard". After Hale wrote Dr. Kelso a letter, the doctor phoned Hale and told him that: (1) Monica was anemic and bruised easily; (2) he had known the Beggs for some time; and (3) he had examined Monica and concluded that she was not being abused. Hale tried to contact Joy Dollar and Dale Beggs' father "a time or two" but was unsuccessful. Hale and his supervisor, Maslow, finally concluded that the reported abuse of Monica was an "isolated incident of over discipline." However, before Hale contacted the Austins and closed the file, Dale Beggs threw Moni-

1. The name of the Texas Department of Human Resources was changed to the Texas Department of Human Services after the suit was tried.

ca against a shower wall, causing her to sustain severe injuries from which she died on June 15.

In their petition, the Austins alleged that Hale and Maslow were negligent when they failed: (1) to adequately investigate the reports of Monica's abuse; (2) to properly handle written memoranda relating to Monica's injury; (3) to promptly remove Monica from the dangerous environment; (4) to notify them of the reports of Monica's abuse; (5) to properly protect Monica's health and safety; and (6) to comply with laws and regulations relating to child abuse in this state. The Austins asserted that Hale and Maslow were liable to them under article 6252–26 of the Texas Torts Claims Act.[2] Hale and Maslow answered by pleading the defense of official immunity, and they also filed a motion for a summary judgment based on this defensive theory. The Austins answered the motion by contending that Hale and Maslow were negligent in performing their ministerial duties, which is an exception to the official-immunity doctrine. As previously noted, the court granted the summary judgment in Hale's and Maslow's favor, and the Austins appeal.

In their only point of error, the Austins claim that the court erred when it granted the summary judgment because it was based upon an overly-broad protection of DHR's employees under the official-immunity doctrine. Specifically, they argue that DHR investigators, like Hale and Maslow, do not have any discretion in performing an investigation under section 34.05 of the Family Code, although they may exercise their discretion in deciding what action to take after they have completed an investigation. See Tex.Fam. Code Ann. § 34.05 (Vernon 1975 and Vernon Supp.1985). Therefore, they contend that the doctrine of official immunity did not protect Hale and Maslow while making the ministerial investigation under section 34.05. For this reason they assert that the motion for a

summary judgment was improperly granted because Hale and Maslow had failed to prove that they were not negligent as a matter of law. However, Hale and Maslow claim that they were acting in a quasi-judicial capacity, a capacity which required them to exercise their discretion, and that any fact issues relating to negligence on their part are irrelevant.

▬▬ When a defendant is a movant for a summary judgment, and he is basing his motion on an affirmative defense, he must prove all of the elements of such defense as a matter of law. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). Under the doctrine of official immunity, a state employee whose status or actions may be classified as quasi-judicial " 'enjoys immunity from being personally liable as long as he acts in good faith within the scope of his authority.' " *Augustine By Augustine v. Nusom*, 671 S.W.2d 112, 115 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (quoting *Baker v. Story*, 621 S.W.2d 639, 644 (Tex.App.—San Antonio 1981, writ ref'd n.r.e.)). Therefore, to be entitled to a summary judgment on the affirmative defense of official immunity, Hale and Maslow had to establish as a matter of law that their positions with DHR had a quasi-judicial status and that they were acting in good faith within their authority as quasi-judicial employees when they conducted the investigation. *See Baker*, 621 S.W.2d at 644. When a state employee gathers facts and then acts, such actions are quasi-judicial in nature. *Augustine*, 671 S.W.2d at 115.

When reviewing a motion for a summary judgment, an appellate court must apply the following rules:

1. The movant for a summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding

---

**2.** Article 6252–26 has been codified at Tex.Civ.P. & Rem. Code Ann. ch. 104 (Vernon Pamph. 1986).

67

a summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548–49 (Tex.1985).

As noted above, Hale and Maslow had to conclusively establish that they were acting within their authority in a quasi-judicial capacity when they conducted the investigation. Section 34.05 of the Family Code provides:

§ 34.05 Investigation and Report of Receiving Agency

(a) The Texas Department of Human Services ... shall make a thorough investigation promptly after receiving either the oral or written report [that a child has been or will be abused or neglected, or has died of abuse or neglect]. The primary purpose of the investigation shall be the protection of the child.

(b) In the investigation the department ... shall determine:

(1) the nature, extent, and cause of the abuse or neglect;

(2) the identity of the person responsible for the abuse or neglect;

(3) the names and conditions of the other children in the home;

(4) an evaluation of the parents or persons responsible for the care of the child;

(5) the adequacy of the home environment;

(6) the relationship of the child to the parents or persons responsible for the care of the child;

(7) all other pertinent data.

(c) The investigation shall include a visit to the child's home, a physical examination of all the children in that home, and an interview with the subject child. The interview with the child may be conducted at any reasonable time and at any place.... he investigation may include an interview with the child's parents. The investigation may include a psychological or psychiatric examination of all the children in that home.

\* \* \* \* \* \*

(d) If, before the investigation is complete, the opinion of the investigators is that immediate removal is necessary to protect the child from further abuse or neglect, the investigators shall file a petition ... for temporary care and protection of the child.

(e) The ... department shall make a complete written report of the investigation. The report, together with its recommendations, shall be submitted to the juvenile court or the district court, the district attorney, and the appropriate law enforcement agency if sufficient grounds for the institution of a suit affecting a parent-child relationship are found.

\* \* \* \* \* \*

Tex.Fam.Code Ann. § 34.05 (Vernon 1975 and Vernon Supp.1985).

Hale and Maslow established as a matter of law that they were acting under section 34.05 to gather information so that they could take action based upon that information. Quasi-judicial actions are those acts which are discretionary in character and require "personal deliberation, decision and judgment." *Baker,* 621 S.W.2d at 645. In contrast, ministerial acts require "obedience to orders, or the performance of a duty as to which the actor is left no choice." *Id.* " 'Where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial; but where the act to be done involves the exercise of discretion or judgment ..., it is not to be deemed merely ministerial.' " *Rains v. Simpson,* 50 Tex. 495, 501 (1878) (quoting *Commissioner of the Land Office v. Smith,* 5 Tex. 471, 479 (1849)).

Although there are some mandatory provisions in section 34.05 which indicate that the investigation may involve some ministerial acts, the section is not completely man-

datory. For instance, section 34.05(b)(7) specifies that, in addition to the information listed in (1) through (6), the department shall determine "all other pertinent data." Thus, the person or persons conducting the investigation have the freedom to conduct each investigation in an individual way and to determine, using their own discretion, what other information they may need to acquire before deciding what action should be taken. In section 34.05(c), the legislature also provided that an investigator has discretion in choosing where and when to interview and examine the child that is the subject of the report. Furthermore, the legislature provided in that section that the investigator, in his discretion, "may" want to interview the child's parents or have a psychological or psychiatric examination of all of the children in the home. Additionally, section 34.05(d) outlines a procedure whereby the investigator "may" remove the child from the home even before he completes the investigation. This subsection, more than any other subsection within section 34.05, indicates that the investigation under section 34.05 is not merely a ministerial act being performed by an employee who is in a quasi-judicial position. Rather, the investigator may exercise his discretion as an integral part of the investigation before deciding what action should be taken. Therefore, the evidence conclusively established that Hale and Maslow occupied quasi-judicial positions as employees of DHR and that they were acting within their authority and were performing quasi-judicial acts when they conducted the investigation of the report that Monica had been abused.

■ Our conclusion that Hale and Maslow were acting within their authority as quasi-judicial officers is also supported by the public policy behind the doctrine of official immunity. The policy is that, if administrative officials are held liable for their negligence, "the prudent would be reluctant to enter governmental service and even competent persons who entered public life would not be zealous in discharging their duties." *Baker*, 621 S.W.2d at 643–44. This problem is apparent in the area of child abuse where the investigator is required to make a decision that, in all likelihood, is going to be viewed by someone as improvident, no matter what the decision is. When making this delicate decision, a child-abuse investigator should not have to worry about his own potential liability as long as he acts within his authority and in good faith.

The last element of their affirmative defense which Hale and Maslow had to conclusively establish was that they were acting in good faith when they made the investigation. The record did not contain any evidence that they had acted in bad faith when they conducted the investigation, and the Austins did not allege that they had acted in bad faith. Considering their actions as a whole, the evidence conclusively established that Hale and Maslow conducted the investigation in good faith. Therefore, the third element of official immunity was conclusively established.

The Austins have attempted to raise several fact issues on appeal to defeat the summary judgment. However, all of those issues relate to their claim that Hale and Maslow were negligent in conducting the investigation. Because Hale and Maslow conclusively proved that they were protected by official immunity, they cannot be held liable for any negligent acts which they may have committed while acting within their quasi-judicial authority. *See Baker*, 621 S.W.2d at 644. Therefore, any fact issues relating to their alleged negligence are immaterial. A motion for a summary judgment cannot be defeated by the existence of an immaterial fact issue. *Borg-Warner Acceptance Corp. v. C.I.T. Corp.*, 679 S.W.2d 140, 144 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.). Accordingly, point one is overruled, and the summary judgment is affirmed.