Herbert L. KOERSELMAN, Appellant,

v.

Maurice L. RHYNARD and Wife,
Rebecca M. Rhynard,
Appellees.

No. 13–93–587–CV.

Court of Appeals of Texas,
Corpus Christi.

March 10, 1994.

Kelli Hamm Karczewski, Asst. Atty. Gen., Dan Morales, Atty. Gen., Will Pryor, First Asst. Atty. Gen., Mary F. Keller, Deputy Asst. Atty. Gen., Jorge Vega, Chief, Gen. Litigation Div., Austin, for appellant.

Ann Chrane, Huntsville, Joe Hall, Huntsville, for appellees.

Before GILBERTO HINOJOSA, KENNEDY and YAÑEZ, JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

This is an appeal from the trial court's denial of a motion for summary judgment filed by appellant, Herbert L. Koersel-

man. Appellant's sole point of error on appeal is that the trial court erred in not granting summary judgment based on his affirmative defense of official immunity. We reverse the trial court's ruling.

In 1984, appellee, Maurice L. Rhynard, was employed as an interim faculty member by the music department of Sam Houston State University ("SHSU"). In 1988, he was placed on a tenure track. Dr. Rhynard became eligible for tenure in April 1990.

The tenure process called for a probationary faculty member's performance to be evaluated by the students, tenured faculty, and the department chair. At the time he or she was considered for tenure, the tenure committee would take this information into consideration in determining whether to grant tenure. Appellant Koerselman, as Chair of the music department, was responsible for placing these evaluations in the candidate's file and conducted the tenure elections of each candidate for tenure.

In Dr. Rhynard's first tenure election, held on April 5, 1990, the tenured faculty inquired about rumors of sexual harassment charges against Dr. Rhynard. Dr. Koerselman said that this information was "confidential and privileged." Subsequent to the election, Dr. Koerselman wrote a letter, dated April 11, 1990, to Dean Richard Cording recommending that Dr. Rhynard be denied tenure. Dr. Koerselman stated in the letter that students had complained about inappropriate comments made by Dr. Rhynard because some comments had sexual overtones. The committee, however, decided not to render a decision regarding tenure because the committee found that Dr. Koerselman failed to place the requisite evaluation summaries in Dr. Rhynard's tenure file. Dean Cording advised appellant to place the evaluation summaries in Dr. Rhynard's tenure file before further consideration by the tenure committee. Appellant complied and placed some evaluations in the file. A second tenure election was held and Dr. Rhynard was denied tenure by the tenure committee.

As a result of the tenure committee's action in denying him tenure, Dr. Rhynard brought suit against the Board of Regents of the Texas State University System, Sam Houston State University, Sam Houston State University Faculty Tenure Hearing Committee, Martin J. Anisman (individually and as president of SHSU), B.K. Marks (vice-president of SHSU), Richard Cording (Dean of the College of Arts and Sciences at SHSU), Herbert Leroy Koerselman (individually and as Chair of the Department of Music at SHSU), and Jerry L. Dowling (individually and as Chair of the Faculty Tenure Hearing Committee of SHSU). Dr. Rhynard brought an action for violations of his constitutional rights to due process and equal protection, breach of contract, tortious interference with contract, and defamation of character and sought relief in the form of damages and injunctive and declaratory relief.

Defendants filed a motion for summary judgment asserting sovereign and official immunity which the trial court granted against all defendants except Dr. Koerselman, individually. The trial court severed Dr. Koerselman from the other defendants in the lawsuit, thus rendering the partial summary judgment final. Appellant Koerselman, in his individual capacity, reasserted the original motion for summary judgment which the trial court again denied. Appellant appeals from this interlocutory order.

By his sole point of error, appellant claims that the trial court erred in denying his motion for summary judgment and that he is entitled to official immunity.

■ Denial of a motion for summary judgment is an interlocutory order which ordinarily cannot be appealed. However, one may assert such an appeal if it is based on a claim of immunity by an individual who is an officer or employee of the state. Tex.Civ. Prac. & Rem.Code Ann. § 51.014(5) (Vernon Supp.1994); see *City of Houston v. Kilburn,* 849 S.W.2d 810, 812 (Tex.1993). Thus the appeal is properly before this court.

The standard for reviewing a motion for summary judgment is well established. In order for the motion to be granted, appellant must conclusively prove all elements of his affirmative defense as a matter of law. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989); *Garza v. Smith,* 860 S.W.2d 631, 634 (Tex. App.—Corpus Christi 1993, no writ); *Villar-*

*real v. Martinez*, 834 S.W.2d 450, 452 (Tex. App.—Corpus Christi 1992, no writ). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). A properly pleaded affirmative defense, supported by uncontroverted summary judgment evidence, may serve as the basis for a summary judgment. *Albright v. Texas Dep't of Human Serv.*, 859 S.W.2d 575, 578 (Tex.App.—Houston [1st Dist.] 1993, no writ); *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 (Tex.1991). The non-movant must expressly present to the trial court any reasons seeking to avoid movant's entitlement and he must present summary judgment proof when necessary to establish a fact issue. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); *Albright*, 859 S.W.2d at 579.

■ Official immunity is an affirmative defense. *Kilburn*, 849 S.W.2d at 812 n. 1. Under the doctrine of official immunity, state employees are immune from being personally liable in tort actions for discretionary acts performed in good faith within the scope of their employment. *Albright*, 859 S.W.2d at 579; *Austin v. Hale*, 711 S.W.2d 64, 66 (Tex. App.—Waco 1986, no writ); *Torres v. Owens*, 380 S.W.2d 30, 33 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.). Officials are not held liable for honest mistakes of law or judgment. *Torres*, 380 S.W.2d at 35. Thus, three factors constitute the doctrine of official immunity: (1) the official acts within his scope of employment; (2) the official performs a discretionary, not ministerial, act; and (3) the official acted in good faith.

The issue here is whether Dr. Koerselman is immune from suit because of his status as an official and because the cause of action arose as a result of his official activities on behalf of SHSU. Dr. Koerselman claims that he had conclusively established all elements of the defense of official immunity and that there are no genuine issues of material fact. Dr. Rhynard, on the other hand, contends that appellant acted in bad faith and outside the scope of his authority by failing to place evaluation summaries in his file since this was a mandatory, not discretionary, act.

### Scope of Employment

■ We look first to determine whether Dr. Koerselman was acting within his scope of employment when he failed to provide the evaluation summaries. A person acts within the scope of his authority when he performs his official duties. The fact that a specific act that forms the basis of the suit may have been wrongly or negligently performed does not take it outside of the scope of authority. *Edgar v. Plummer*, 845 S.W.2d 452, 453 (Tex.App.—Texarkana 1993, no writ); *Baker Hotel of Dallas v. Rogers*, 157 S.W.2d 940, 943 (Tex.Civ.App.—Dallas 1941), *writ ref'd w.o.m. per curiam*, 138 Tex. 398, 160 S.W.2d 522 (1942). In *Edgar*, a motorist filed suit against a police officer alleging he was illegally stopped and detained. The court found that the officer had probable cause to stop the motorist. Nevertheless, the court held that even if the officer had been mistaken in detaining the motorist, he was performing his official duty of enforcing traffic laws and therefore acted within the scope of his authority. 845 S.W.2d at 453.

Here, Dr. Koerselman's official duties included overseeing the tenure election process. Dr. Koerselman, in carrying out these official duties, failed to place evaluations in the files of candidates for tenure and instead allowed the candidates to create their own tenure files. Even though such an act may have been wrong, it was done in connection with his official duty as the department chair to oversee the tenure election process; therefore, Dr. Koerselman was acting within his scope of employment.

### Discretionary or Ministerial Acts

■ We will now determine whether the faculty handbook's requirement of placing evaluations in a tenure file is a discretionary or ministerial duty. Discretionary actions are those requiring personal deliberation, decision and judgment. *Travis v. City of Mesquite*, 830 S.W.2d 94, 102 (Tex.1992) (Cornyn, J., concurring); *Albright*, 859 S.W.2d at 579;

*Garza v. Salvatierra,* 846 S.W.2d 17, 22 (Tex. App.—San Antonio 1992, writ dism'd w.o.j.). Investigating and acting on gathered facts has been designated as quasi-judicial actions involving the exercise of discretion. *Albright,* 859 S.W.2d at 579. Discretionary acts are acts which involve determining what the policies of a governmental unit are but do not extend to the carrying out of the specifics of those policies. *Salvatierra,* 846 S.W.2d at 22. Ministerial acts are those where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment. *Travis,* 830 S.W.2d at 102 (Cornyn, J., concurring). Ministerial actions require obedience to orders or the performance of a duty as to which the actor is left no choice of his own. *Austin,* 711 S.W.2d at 67; *Albright,* 859 S.W.2d at 579.

In *Salvatierra,* the court held that a city bus driver was not protected by official immunity and could be held civilly liable for causing personal injuries when his bus struck a child because the action of driving a bus along a designated route is a ministerial, not discretionary, act. Determining the schedule and route of the bus was a discretionary policy decision on the part of a governmental unit. The implementation action by a bus driver in *driving* the bus and thus carrying out that policy decision was a ministerial action. *Salvatierra,* 846 S.W.2d at 22. The court further stated that the bus driver was not an administrative official nor was he under any duty to make any decision other than driving the bus. *Salvatierra,* 846 S.W.2d at 22. Thus, the outcome would be different if the bus driver had been an administrative officer who might have been required to make policy decisions which would thus be characterized as discretionary rather than ministerial actions.

Under *Salvatierra,* it would seem that the placement of evaluations in a tenure file can be viewed as the carrying out of a policy decision, i.e. the tenure process in the faculty guidelines handbook, as to what information should be available upon tenure review, and thus a ministerial action. However, Dr. Koerselman was an administrative official with many discretionary duties. He was ex-

ercising personal discretion in deciding that the policy of the department should be one in which the faculty member creates his own tenure file rather than having the department chair create the file. Although such an action may have resulted in non-compliance with the faculty guidelines, appellant did not lose his cloak of official immunity from tort liability as long as he acted within the scope of his authority. *Torres,* 380 S.W.2d at 34.

■ Furthermore, one mandatory act is not determinative of the issue. Instead we must consider, as a whole, all of the duties required of Dr. Koerselman. *Austin,* 711 S.W.2d at 67; *Torres,* 380 S.W.2d at 34. In *Austin,* parents of a deceased child sued employees from the Department of Human Resources alleging the employees were negligent in investigating an abuse report on their child. The parents argued that the investigators had no discretion in performing an investigation under section 34.05 of the Family Code although they may exercise discretion in deciding what action to take after they have completed an investigation. Therefore, the parents contended that the doctrine of official immunity did not protect the investigators while making the ministerial investigation under section 34.05. The court held that, although there are some mandatory provisions in section 34.05 which indicate that the investigation involves some ministerial acts, the section is not completely mandatory. Rather, other subsections allow the investigators to exercise their discretion as an integral part of the investigation before deciding what action should be taken. *Austin,* 711 S.W.2d at 67–68. Thus, considering all of the investigators' actions under section 34.05 as a whole, the court found that they were performing discretionary acts within their authority.

In *Torres,* plaintiffs argued that the commissioners of a county navigation district were not entitled to official immunity because they failed to perform what was a ministerial duty. 380 S.W.2d at 33. Plaintiffs made a distinction in the nature of the commissioners' duties between their decision to do the dredging work and the actual performance of the work once the decision had been made. Plaintiffs asserted that the decision to under-

take the dredging was a discretionary act. However, in the actual performance of the dredging, certain statutes required that a registered professional engineer be employed to supervise the work and report thereon. Plaintiffs argued that the commissioners failed to perform this ministerial duty and thus are removed from the protection of the official immunity doctrine. The court of appeals held that the decisions of the commissioners could not be so separated but that all actions of the commissioners in connection with such dredging involved the exercise of discretion for which they could not be held liable. *Torres*, 380 S.W.2d at 34. The court thus held that employees of a "governmental agency are not personally liable for acts of commission or *omission* in performance of their official duties." *Torres*, 380 S.W.2d at 35 (quoting *Dallas County Flood Control Dist. v. Fowler*, 280 S.W.2d 336, 339 (Tex.Civ. App.—Waco 1955, writ ref'd n.r.e.)) (emphasis added).

Similarly, in the present case, Dr. Rhynard argues that official immunity does not protect Dr. Koerselman because he had no discretion in preparing the files to be used in a tenure election, although he may exercise his discretion in deciding what action to take after he has gathered the information and completed preparing the files. Dr. Koerselman's decisions cannot be so separated. Even if placing evaluations in the files is a ministerial act, it is but one duty required of the department chair in conducting tenure elections. Rather, the department chair has many duties which require him to exercise his discretion as an integral part of conducting tenure elections before deciding on whether to make a recommendation for tenure. Accordingly, he was performing discretionary acts within his scope of employment and cannot be held personally liable for an act of omission in the performance of his official duties, unless he acted wilfully or maliciously. *Torres*, 380 S.W.2d at 35.

### Good Faith

This now leads us to examine the good faith element which is the final factor that must be satisfied to be entitled to official immunity. Dr. Rhynard asserted that Dr.

Koerselman did not act in good faith because (1) he did not place evaluation summaries in Dr. Rhynard's tenure file, and (2) he stated that information regarding sexual harassment charges was "confidential and privileged." Dr. Rhynard, however, failed to attach any summary judgment evidence to controvert Dr. Koerselman's summary judgment evidence that he did act in good faith.

With respect to Dr. Rhynard's first assertion that appellant acted in bad faith, Dr. Koerselman testified in his affidavit that it was his usual practice to allow each probationary faculty member to create his own tenure file. The files in the previous tenure elections were prepared in the same manner as Dr. Rhynard's file. Thus, Dr. Rhynard was not treated differently than other tenure candidates. When the department chair was asked to include the evaluations in Dr. Rhynard's file for the second election, he did proceed to place some in the file. Additionally, Bobby Marks, vice-president of SHSU, and Richard Cording, Dean of the College of Arts and Sciences, both testified in their affidavits that although the tenure file does play a small role in the overall tenure process, the overriding variable in tenure elections is the opportunity to observe the probationary faculty member's performance over a number of years.

As to Dr. Rhynard's second argument, he has failed to offer any summary judgment proof showing the statement was actuated by malice. Dr. Rhynard's assertions in his response to appellant's motion for summary judgment do not constitute proper summary judgment proof. *Nicholson v. Memorial Hosp. Sys.*, 722 S.W.2d 746, 749 (Tex.App.— Houston [14th Dist.] 1986, writ ref'd n.r.e.). Dr. Koerselman's summary judgment proof, however, establishes that he was exercising his discretion in responding cautiously to inquiries regarding sexual harassment charges. As a result, we find that appellant was acting in good faith and thus is entitled to official immunity since he was performing official acts.

Dr. Rhynard also asserts that the trial court properly denied appellant's motion for summary judgment since there are other allegations that Dr. Koerselman acted outside

the scope of his employment. Dr. Rhynard alleges that appellant did not have the authority to make libelous and slanderous statements to the detriment of Dr. Rhynard, these statements being that information regarding sexual harassment charges were "confidential and privileged" and that Dr. Rhynard had made comments having sexual overtones.

Persons can still be sued in their individual capacities for wrongful unofficial acts. *Bagg v. University of Texas Medical Branch*, 726 S.W.2d 582, 586 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (ordering eavesdropping of telephone conversations). A government employee can be held personally liable for individual and separate torts such as assault, trespass, fraud or conversion. *Russell v. Edgewood Indep. School Dist.*, 406 S.W.2d 249, 252 (Tex.Civ. App.—San Antonio 1966, writ ref'd n.r.e.).

Defamatory statements, however, are conditionally or qualifiedly privileged in certain circumstances. Certain communications are privileged when made in good faith on any subject matter in which the author has an interest or a duty to perform to another person having a corresponding interest or duty. *Goree v. Carnes*, 625 S.W.2d 380, 384 (Tex.App.—San Antonio 1981, no writ); *Zarate v. Cortinas*, 553 S.W.2d 652, 655 (Tex.Civ.App.—Corpus Christi 1977, no writ). The effect of the privilege is to justify the communication when it was made with proper motives and without actual malice. *Zarate*, 553 S.W.2d at 655.

Texas Rule of Civil Procedure 166a(c) states that "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal" of a summary judgment. *See also Clear Creek*, 589 S.W.2d at 675. In his motion for summary judgment in the trial court, appellant argued that the statements in his letter to Dean Cording were not libelous because the letter was a "privileged communication." This is sufficient to bring the qualified privilege issue to the attention of the trial court and thus allows this court to consider the matter on appeal.

Additionally, as a general rule, briefing rules are construed liberally. *Williams*

*v. Khalaf*, 802 S.W.2d 651, 658 (Tex.1990); *State Nat'l Bank v. Academia, Inc.*, 802 S.W.2d 282, 300 (Tex.App.—Corpus Christi 1990, writ denied); *Ortiz v. Spann*, 671 S.W.2d 909, 914 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). Although appellant's brief did not specifically proffer a qualified privilege argument as such, the matter was sufficiently brought to the attention of the court through the arguments in his brief. Appellant's arguments regarding the good faith performance of his duty could also be construed to apply to the qualified privilege issue. Accordingly, the court will consider the issue.

Here, Dr. Koerselman made the remarks in question on a subject of interest to him, as the department chair, and to the other tenure committee members. As discussed above, Dr. Koerselman acted in good faith and without malice when he made these statements. Thus, the statements fall within the purview of a qualified privileged communication since they were made in the course of duty, on a subject in which the author has an interest, and in good faith without actual malice.

Appellant's sole point of error is sustained. We reverse the trial court's judgment denying Dr. Koerselman's motion for summary judgment and render judgment in favor of the appellant.