IN THE SUPREME COURT OF TEXAS









IN THE SUPREME COURT OF TEXAS

 

════════════

No. 02-0260

════════════

 

Anne Ballantyne, Mary McComb,
Jon Sandige, Richard Schimpff, and Susie Willerson, Petitioners,

 

v.

 

Champion Builders, Inc. and
Primero Projects, L.L.C., Respondents

 

════════════════════════════════════════════════════

On Petition for Review from the

Court of Appeals for the Fourth District of
Texas

════════════════════════════════════════════════════

 

 

Argued
on January 22, 2003

 

 

Justice Wainwright delivered
the opinion of the Court, in which Justice
Hecht, Justice Owen, Justice O=Neill, Justice Jefferson, Justice
Schneider, Justice Smith,
and Justice Brister joined.

 

Justice O=Neill filed a concurring opinion, in
which Justice Hecht and Justice Jefferson joined.

 

Chief Justice Phillips did
not participate in the decision.

 

In this case, we decide whether the individual
members of a city=s board
of adjustment are afforded official immunity for state law claims arising from
their actions as members of the board.

Champion Builders, Inc. sued the individual
members of the City of Terrell Hills Board of Adjustment (BOA) for negligence,
gross negligence, and intentional interference with contract arising from the
BOA=s revocation of Champion=s permit to construct an apartment
building.  The jury returned a verdict in
favor of Champion and rejected the members=
assertion of official immunity.  The
trial court granted the BOA members=
motion for judgment non obstante veredicto
on official immunity.  A divided court of
appeals, sitting en banc, relying on subjective evidence of the asserted
motivation of the members, reversed the judgment and held that more than a
scintilla of evidence supported the jury=s
failure to find that the good faith prong of the affirmative defense of
official immunity had been proven.  70
S.W.3d 221, 231.  We disagree.  The BOA members established official immunity
at trial as a matter of law.  We further
reaffirm that consideration of subjective evidence of the good faith element of
official immunity is inappropriate. 
Therefore, we reverse the court of appeals=
judgment in part and render judgment that Champion take nothing.

I. 
Background

Champion Builders, along with Roldan
Trevino and Armando Tamez Jr., initially planned to
construct an eight-unit apartment building on Eventide Drive in the City of
Terrell Hills in Bexar County, Texas. 
Champion, Trevino, and Tamez formed Primero Projects, L.L.C. to develop the property.  Pursuant to settlement, Champion and Primero have the only interests at stake in this lawsuit.[1]  References to Champion in this opinion also
include Primero=s
interests.

When Champion applied for a building permit in
January 1994, the City denied it, citing excessive population density on the
lot.  Champion scaled down the project
and planned a six-unit complex.

In May 1994 the city manager issued a building
permit to Champion for the construction of the six-unit complex.  A group of Terrell Hills residents appealed
the issuance of the permit to the BOA. 
The residents asserted that City Ordinance 634, which required every lot
to have 80 feet of frontage along the adjacent road, precluded construction of
the apartment complex on the portion of the Eventide lot that Champion
purchased.  Terrell Hills, Tex.,
Ordinance 634, ' VII(B)
(July 22, 1982).  The Eventide lot was divided
into two different zones for development. 
Although the total lot had over 120 feet of frontage, the apartment
complex could be built only on the 66.83 feet of frontage that was zoned
semi-commercial.  The Terrell Hills
residents hired an attorney and contested the issuance of the permit.  The residents argued that only the 66.83 feet
of frontage zoned semi-commercial on the Eventide lot could be counted toward
the 80-foot frontage requirement of Ordinance 634.  They concluded that the building permit
should be revoked because the planned development did not comply with Ordinance
634.

The city manager requested an opinion on this
issue from Charles Biery, an attorney in private
practice hired to serve as Terrell Hills city attorney.  In his June 6, 1994 letter, Biery opined that the proposed apartment complex met the
requirements of the Ordinance because the lot had a total frontage along the
road of 123.33 feet.  In Biery=s
opinion, the total dimensions of the entire lot determined the frontage
measurement for purposes of Ordinance 634, rather than the footage for the
commercially-zoned section of the lot. 
Thus, Biery concluded that the city manager
properly issued the permit.  The
residents believed that, as applied to Champion=s
application for a permit, the lot was required to have 80 feet of commercially
zoned frontage on Eventide as a condition of Champion=s
planned commercial use.

On June 7, 1994 the BOA convened a public hearing
to consider the appeal of the building permit issuance.  At the meeting, the BOA heard from the
public, including Terrell Hills residents and James Spears, the owner of
Champion.  Biery
also attended the meeting, and the BOA members had been provided with a copy of
his June 6 letter to the city manager. 
After listening to the public comments, the BOA members discussed the
permit in an executive session with Biery.  According to the transcript of the executive
session, Biery reiterated his opinion, set forth in
his June 6 letter, that the lot satisfied the frontage requirement and the City
properly issued the permit.  The
transcript also shows that the BOA members considered the comments of the
residents, who opined through their attorney that the frontage of Champion=s lot did not meet the requirements of
Ordinance 634.  Biery
explained to the BOA members that they were presented with different opinions from
two attorneys, and that the BOA members could Ado
whatever [they] want[ed] to.@  He indicated that they would likely be sued
by one of the parties regardless of which decision they made.  The transcript also includes a discussion of
subjective and derogatory views of some members of the BOA concerning the type
of residents who might be attracted to an apartment development.  Some of the BOA members indicated that
persons who would move into the apartments may be loud, disruptive in the
community, and more likely to be involved in illegal activities.  When they resumed the public meeting, the BOA
members voted to revoke the permit.

Champion appealed the BOA=s
decision to revoke the permit to district court.  In August 1994, the trial court rendered
summary judgment in favor of Champion and ordered reinstatement of the
permit.  The court of appeals affirmed
the judgment, and this Court denied review. 
Dubose v. Champion Builders, Inc., No. 04-94-00825-CV, 1995 WL
694975 (Tex. App.CSan
Antonio Nov. 22, 1995, writ denied) (not designated for publication).

After its successful appeal, Champion, however,
did not seek to have the permit renewed. 
Spears testified at trial that the litigation and appeal of the issuance
of the building permit hindered financing efforts for the apartment complex and
was a concern to Champion=s
partners in the planned development of the Eventide property.  Champion ultimately decided to abandon the
project.

In June 1996, Champion sued the City, the BOA, and
the individual BOA members for revocation of the building permit and the City
for changes in the 1995 ordinances that increased the minimum square footage
requirement for single family apartments beyond the square footage of Champion=s project.  Champion alleged that the individual BOA
members were negligent and grossly negligent for holding an illegal meeting,
revoking a permit to which Champion was entitled, and failing to follow the
advice of the city attorney.  Champion
further asserted that by revoking the building permit the individual BOA
members were liable for tortious interference with
Champion=s
contracts with Primero and third parties to build the
apartment.  Champion also asserted
takings claims against the City and the BOA. 
The BOA members contended that they were shielded from liability by
official immunity.  The court submitted
questions to the jury on negligence, gross negligence, tortious
interference, and the amount of damages to be awarded Champion, if any.  In separate questions, the charge also asked
if the City or the BOA, as an entity, committed a taking and whether the
individual BOA members were entitled to official immunity.

 

The official immunity question listed the three
elements of official immunity and defined pertinent legal terms.

Were
the persons named below acting within their official immunity or privilege as
Board Members for the City of Terrell Hills=
Board of Adjustment during the occurrence in question?

 

AOfficial immunity or privilege@ means that:

a.         the person acted in a discretionary function;

b.         the person acted in good faith; and

c.         the person acted within the scope of his or her authority.

 

ADiscretionary function@ means an act that requires personal
deliberation, decision, and judgment.  An
act by a government official in the course of performing a discretionary
function does not lose its discretionary status because it was wrongful.  Actions which require obedience to orders or
the performance of a duty to which the person has no choice are ministerial.

 

AGood faith@
means an official or employee acts in good faith if a reasonably prudent
official or employee, under the same or similar circumstances, could have
believed that his or her acts were justified.

 

AScope of authority@ means a public official or employee is
acting within the scope of his or her authority if he or she is discharging the
duties generally assigned to him or her even if they are performed wrongly or
negligently.  Public officials and
employees are not liable for acts performed in good faith within the scope of
authority, even when the officials violate or misinterpret the law.

 

The charge instructed the jury to answer Ayes@ or Ano@ for each of the five board members.

The jury returned a verdict in favor of Champion
on all claims and rejected the BOA members=
immunity defense.  The jury found over
$700,000 in actual and punitive damages against the defendants, over $600,000
of which was against the individual BOA members.

The City, the BOA, and the BOA members filed
motions for judgment n.o.v.  The City and the BOA argued that there was
insufficient evidence to sustain the jury=s
verdict that there was a compensable taking. 
The trial court agreed and granted the City=s
and the BOA=s motions
for judgment n.o.v. 
The BOA members argued that they established their affirmative defense
of official immunity as a matter of law. 
In response, Champion argued that official immunity does not protect
members of a board of adjustment, and, even if it does, the BOA members did not
meet their burden of proof at trial to establish all the elements of the
defense.  The trial court granted the BOA
members= motion
for judgment n.o.v. on official immunity.  Accordingly, the trial court entered a
take-nothing judgment against Champion.

The court of appeals affirmed the trial court=s judgment.  70 S.W.3d at 224.  Champion moved for rehearing en banc, which
the court of appeals granted.  Id.  On rehearing en banc, a divided court
affirmed the trial court=s
judgment for the City and the BOA as to the takings claim, but reversed the
judgment n.o.v. on official immunity of the BOA
members and remanded the case for entry of judgment in accordance with the jury=s verdict.  Id. 
The court of appeals held that the BOA members did not conclusively
establish that they were entitled to official immunity.  Id. at 231.  The court of appeals stated that A[c]ourts
employ an objective standard in analyzing official immunity,@ but it determined, nevertheless, that
the jury properly considered subjective evidence of the BOA members= intent because the official immunity
defense Acannot be
stretched . . . to provide immunity to an official whose subjective bad faith
is demonstrated in the record.@  Id. at 229.  A split court of appeals denied further
reconsideration en banc.[2]  The dissenting justices contended that the
majority erred by considering subjective evidence of the good faith element of
official immunity.  Id. at 233.

The BOA members petitioned this Court for review
asserting that they established official immunity as a matter of law and that
the court of appeals erred in considering subjective evidence in evaluating the
good faith prong of the immunity defense. 
The BOA members also assert that they established official immunity as a
matter of law.  In addition, the BOA
members contend that their assertion of official immunity amounted to an
assertion of legislative immunity. 
Champion did not appeal the court of appeals=
judgment against it on the takings claims. 
Because the issue of official immunity is dispositive,
we turn to that issue.

II. 
Applicability of Official Immunity

Champion asserts that official immunity does not
protect members of a board of adjustment. 
Applying official immunity to the BOA members, it claims, would be Aforcing the square peg of building
permit revocation . . . into the round hole of police officer high-speed chase
immunity precedent.@

Although we have approved the application of
official immunity in other contexts, we have not previously addressed whether
official immunity extends to the members of a city=s
board of adjustment.  Official immunity
protects public officials from suit arising from performance of their (1)
discretionary duties (2) in good faith (3) within the scope of their
authority.  City of Lancaster v.
Chambers, 883 S.W.2d 650, 653 (Tex. 1994) (citing Wyse v. Dep=t
of Pub. Safety, 733 S.W.2d 224, 227 (Tex. App.CWaco
1986, writ ref=d n.r.e.); Baker v. Story, 621 S.W.2d 639, 644 (Tex. Civ. App._San Antonio 1981, writ ref=d n.r.e.)).

We begin our analysis by reviewing Texas case law
on official immunity and its applicability to public officials who perform
functions similar to the BOA members to determine whether the Apeg@
in this case is actually Asquare.@ 
We do not address whether legislative or judicial immunity was preserved
for review or whether either immunity applies to members of a city=s board of adjustment.

A. 
Official Immunity in Texas

Fifty years ago, we recognized a Agood faith@
immunity for certain public officials.  Campbell
v. Jones, 264 S.W.2d 425 (Tex. 1954). 
We held that trustees of a school board were not personally liable for
damages for an alleged breach of a teacher=s
contract.  Id. at 427.  The trustees were charged with the
discretionary duty of renewing or terminating employment contracts and Ain good faith were trying to comply
with what reasonably appeared to be the then rulings of the State
Superintendent.@  Id. 
We refused to assent to a doctrine that would make public officials with
discretionary duties personally liable for mistaken judgment.  Id.

Other courts referred to this defense as immunity
protecting Aquasi-judicial@ officials.  Austin v. Hale, 711 S.W.2d 64, 68
(Tex. App.CWaco
1986, no writ); Augustine v. Nusom, 671 S.W.2d
112, 115 (Tex. App._Houston [14th Dist.] 1984,
writ ref=d n.r.e.); Baker, 621 S.W.2d at 644.  In Baker, the court of appeals held
that where a public official has quasi-judicial or discretionary duties, Ahe enjoys immunity as long as he acts
in good faith within the scope of his authority.@  621 S.W.2d at 644.  The summary judgment evidence, however, did
not conclusively establish that Dr. Jim Story, the head of the university
neurological surgery department and a state employee, was entitled to official
immunity.  Id. at 645-46.  Another appellate court acknowledged that an
employee of a state department, who collected facts and then made
quasi-judicial or discretionary determinations to take action against child day
care facilities, Aenjoys
immunity as long as he acts in good faith within the scope of his authority.@ 
Augustine, 671 S.W.2d at 115 (quoting Baker, 621 S.W.2d at
644); see also Hale, 711 S.W.2d at 68 (concluding that investigators
with the Texas Department of Human Resources "cannot be held liable for
any negligent acts which they may have committed while acting within their
quasi-judicial authority").

In several more recent cases, we recognized
official immunity as an affirmative defense for law enforcement and emergency
response personnel.  Telthorster
v. Tennell, 92 S.W.3d 457, 459-60 (Tex. 2002)
(police officer engaged in an arrest); Wadewitz
v. Montgomery, 951 S.W.2d 464, 467 (Tex. 1997) (police response to
burglary); Chambers, 883 S.W.2d at 653 (high-speed police vehicle
pursuit).  We also have held that
official immunity protects government-employed medical personnel against claims
that arise out of their exercise of governmental, as opposed to medical,
discretion.  Kassen
v. Hatley, 887 S.W.2d 4, 11 (Tex. 1994).

After we articulated the official immunity
standard in these contexts, courts of appeals continued to apply the doctrine
to other public officials.  For example,
in Perry v. Greanias, the court of appeals
relied on Chambers to recognize that a city controller, charged with
conducting audits and assessing compliance in city contracts, was entitled to
official immunity from liability.  95
S.W.3d 683, 697-98 (Tex. App.CHouston
[1st Dist.] 2002, pet. denied). 
Determining that the official=s
evidence proved conclusively that he acted in a discretionary capacity and in
good faith within the scope of his authority, the court affirmed the trial
court=s summary
judgment based on official immunity.  Id.
at 699, 702.  In Medina County
Commissioners=
Court v. Integrity Group, Inc., the court of appeals held that individual
county commissioners were entitled to official immunity from suit arising from
their votes to deny approval of a property subdivision plan.  944 S.W.2d 6, 10 (Tex. App.CSan Antonio, 1996, no writ); see
also Williams v. Houston Firemen's Relief and Ret. Fund, 121 S.W.3d 415,
436 (Tex. App.CHouston
[1st Dist.] 2003, no pet.) (trustees of firemen's relief and retirement fund
entitled to official immunity from personal liability in interpreting retirement
statute, promulgating guidelines, administering the fund, and denying claims
for benefits).

In summary, Texas courts have long recognized
official immunity, in substance if not by name, for a variety of public
officials.

B. Rationale of Immunity for Public Officials

Common law official immunity is based on the
necessity of public officials to act in the public interest with confidence and
without the hesitation that could arise from having their judgment continually
questioned by extended litigation.  See
Kassen, 887 S.W.2d at 8; Baker, 621 S.W.2d
at 643-44.  AThe
public would suffer if government officials, who must exercise judgment and
discretion in their jobs, were subject to civil lawsuits that second-guessed
their decisions.@  Kassen, 887
S.W.2d at 8.  Denying the affirmative
defense of official immunity to public officials in such circumstances Awould contribute not to principled and
fearless decision-making but to intimidation.@  Wood v. Strickland, 420 U.S. 308, 319
(1975) (quoting Pierson v. Ray, 386 U.S. 547, 554 (1967)).  Certainly, public officials may err in the
performance of their duties.  Id.
at 321.  The existence of immunity
acknowledges this fact, but recognizes that the risk of some error is
preferable to intimidation from action at all. 
Id.  In addition, some of
the most capable candidates would be deterred from entering public service if
heavy burdens on their private resources from monetary liability were a likely
prospect for errors in judgment.  See
id. at 320.

We conclude that official immunity is a bar to
state law claims against individual members of a board of adjustment.  We note that public officials are also
accountable through elections, state criminal and civil statutes, federal
causes of action, and other mechanisms in place to police the conduct of public
officials.

III.  Analysis

The jury found against the BOA members on their
affirmative defense of official immunity. 
The trial court granted a judgment n.o.v.,
finding the defense was established as a matter of law.  The court of appeals reversed the judgment n.o.v. and remanded the case for entry of judgment on the
jury verdict.  As the BOA members had the
burden of proof on their affirmative defense, they can meet that standard after
an adverse verdict only by establishing that official immunity had been proven
as a matter of law.  Dow Chem. Co. v.
Francis, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam);
see Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 181 (Tex.
1997). 

We consider whether the BOA members established
each of the elements of official immunity as a matter of law, i.e., whether the
BOA members were (1) acting within the scope of their authority (2) in
performing their discretionary duties in (3) good faith.  Chambers, 883 S.W.2d at 653; Wyse,
733 S.W.2d at 227; Baker, 621 S.W.2d at 644.

A.  Scope
of Authority

As we explained in Chambers, public
officials act within the scope of their authority if they are discharging the
duties generally assigned to them.  883
S.W.2d at 658.  The Local Government Code
authorizes a municipality to create a board of adjustment.  Tex.
Loc. Gov=t Code '
211.008(a).  A board of adjustment=s statutory authority includes the
power to hear and decide appeals of the city manager=s
zoning decisions, to hear and decide special exceptions to a zoning ordinance,
and to authorize certain zoning variances. 
Id. ''
211.009(a)(1)-(3).  In exercising its
authority to hear and decide zoning appeals, the board of adjustment has the
power to Areverse
or affirm, in whole or in part, or modify@
the city manager=s zoning
decisions and make the correct determination. 
Id. '
211.009(b).  The Terrell Hills BOA was
formed pursuant to this statute, and Terrell Hills City Ordinance 634, sections
XI(A)(9)-(14) codifies the powers granted the BOA by the Legislature.

Champion argues that the BOA members were not
acting within the scope of their authority because no evidence was presented
that the BOA had ever revoked a permit before this instance.  Therefore, Champion concludes that in the
absence of a prior instance of revocation of a building permit by the BOA, the
authority to revoke permits must be specifically vested in the city manager and
not the BOA.  We are not persuaded,
however, by Champion=s
arguments.  Where a statute or ordinance
confers authority on an entity to act, because such authority has not been
exercised previously does not mean that the authority does not exist.

After the BOA members voted to revoke the building
permit, a trial court in a prior proceeding reversed the BOA=s decision, and a court of appeals
affirmed based on its interpretation of Ordinance 634.  DuBose, 1995 WL 694975, at *2.  Champion contends that the subsequent
judicial determination that the BOA erred also is evidence that the BOA members
were acting outside the scope of their authority at the time they voted to
revoke the permit.  On the contrary, the
BOA members were expressly authorized by law to consider and affirm, reverse,
or modify the city manager=s
zoning decision.  Tex. Loc. Gov=t Code '211.009(b).  The fact that the BOA=s
action was later determined to be incorrect is not necessarily probative of
whether their prior actions were in discharge of the duties generally assigned
to them.  See Chambers, 883 S.W.2d
at 658.

We agree with the court of appeals that the BOA
members were acting within the scope of their authority.  72 S.W.3d at 228-29. The Ordinance and
statutes plainly authorize the BOA to revoke a building permit, and Champion
presents no compelling arguments to rebut this conclusion.  The relevant sections of the Texas Local
Government Code and the Ordinance, which are the source of the BOA=s legal authority, conclusively
establish that hearing and deciding appeals of the issuance of building permits
based on zoning regulations is within the authority of the BOA and its members.

B. 
Discretionary Function

We next determine whether the BOA members
performed a discretionary function or merely fulfilled a ministerial act when
they voted to revoke the building permit that the Terrell Hills city manager
issued to Champion.  Ministerial acts are
those for which Athe law
prescribes and defines the duty to be performed with such precision and
certainty as to leave nothing to the exercise of discretion or judgment.@ 
Comm=r
of the Gen. Land Office v. Smith, 5 Tex. 471, 479 (1849).  If the public official must obey an order,
without having any choice in complying, the act is ministerial.  Chambers, 883 S.W.2d at 654 (citing Wyse,
733 S.W.2d at 227).  If an action
involves personal deliberation, decision, and judgment, however, it is
discretionary.  Id.

Champion argues that the BOA members were not
exercising discretion in voting to revoke the building permit because the
members had only one option C
to affirm the issuance of the building permit. 
To support these contentions at trial, Champion argued that by
satisfying all of the requirements of Ordinance 634, issuance of the permit was
mandatory and ministerial.

Given the appellate powers the Legislature granted
to boards of adjustment, it is difficult to follow Champion=s argument that the BOA=s hearing and deciding appeals is only
a ministerial act.  Appellate review of
an action, especially the power of a de novo review, almost inevitably involves
deliberation, judgment, and decision. 
These are the very hallmarks of discretion.  The BOA has the power to hear and decide
appeals from any decision or determination by a city administrative official
pertaining to the enforcement of the city=s
zoning ordinance.  Terrell Hills, Tex.,
Ordinance 634, '
XI(A)(10) (July 22, 1982).  The BOA may
reverse or affirm, in whole or in part, or modify any decision or determination
and make such determination as ought to be made.  Id. '
XI(A)(13).  The BOA members deliberated
and exercised discretion in making their decision.  Accordingly, we agree with the court of
appeals.  See 70 S.W.3d at
228.  In interpreting the applicable
ordinances and deciding as an appellate body to revoke the building permit, the
BOA members performed a discretionary function, as a matter of law.

C.  Good
Faith

1.         Justifiable Conduct of Reasonable
Officials

The parties vigorously contest whether the BOA
members acted in good faith.  To
determine whether a public official acted in good faith, we use the objective
standard adopted in Chambers and ask whether a reasonably prudent
official, under the same or similar circumstances, could have believed that his
conduct was justified based on the information he possessed when the conduct
occurred.  883 S.W.2d at 656; see also
Telthorster, 92 S.W.3d at 465; Univ. of
Houston v. Clark, 38 S.W.3d 578, 584 (Tex. 2000).  The standard of good faith as an element of
official immunity is not a test of carelessness or negligence, or a measure of
an official=s motivation.  See Wadewitz,
951 S.W.2d at 467 n.1; Chambers, 883 S.W.2d at 656 n.5.  This test of good faith does not inquire into
Awhat a reasonable person would have
done,@ but into
Awhat a reasonable [person] could
have believed.@  Telthorster,
92 S.W.3d at 465 (quoting Wadewitz, 951 S.W.2d
at 467 n.1).

Although there may be disagreement about the
merits of the BOA members=
decision, the decision was made in good faith if a reasonably prudent BOA
member could have believed that the facts justified his action when he voted to
revoke Champion=s
building permit.  Champion asserts that
the judgment n.o.v. was improper because there was
more than a scintilla of evidence that the BOA members did not act in good
faith.  Champion contends that it
presented evidence at trial that no legal controversy existed regarding the
frontage requirement for the six-unit apartment project and that, as a result,
the BOA members failed to establish that their votes were justified.

The BOA members had the responsibility to review
the city manager=s
issuance of the permit and to affirm, modify, or revoke the permit.  The decision before them, they contend, was
not the clear-cut case that Champion describes.

Champion misconstrues the legal standard.  When a public official considers two courses
of action that could reasonably be believed to be justified, and selects one,
he satisfies the good faith prong of official immunity as a matter of law.  The inquiry is not what was the best course
of action, but whether the BOA members could have believed their actions were
justified at the time they were taken. 
To show good faith in this context, we do not require the BOA members= application of Ordinance 634 to be
legally correct, only colorable.  See Horsehead Indus., Inc. v. EPA, 999 F.Supp.
59, 64 (D.D.C. 1998) (When determining whether to award attorneys= fees to a prevailing party who sought
withheld documents under the Freedom of Information Act, the court considered,
among other factors, whether the withholding agency=s
interpretation of the request and the act Ahad
a colorable basis in law.@);
Tex. Beef Cattle Co. v. Green, 921 S.W.2d 203, 211 (Tex. 1996) (noting
that a justification defense to a tortious
interference claim may be based on a Agood-faith
claim to a colorable legal right, even though that claim ultimately proves to
be mistaken@).

The key facts underlying the dispute over
application of Ordinance 634 were undisputed, i.e., the number of feet of
frontage the lot had along the adjacent road and the frontage requirement set
forth in the Ordinance.  The application
of an ordinance or statute to undisputed facts falls squarely within the domain
of the statutorily authorized reviewing body, notwithstanding different
opinions on the interpretation of the ordinance.  See W. Tex. Water Refiners, Inc. v.
S&B Beverage Co., 915 S.W.2d 623, 628 (Tex. App.CEl
Paso 1996, no writ) (AInterpretation
of a zoning ordinance is a question of law singularly appropriate to the
independent interpretation of [a] [c]ourt.@). 
This legal determination is not within the province of the jury.  See City of Austin v. Quick, 7 S.W.3d
109, 116 (Tex. 1998) (noting that the legality of a city ordinance is not a
question for the jury to decide).  The
trial court properly held that good faith was satisfied as a matter of law
because the BOA members=
votes were justifiable.

Champion asserted that its expert on zoning
ordinances established that no reasonable BOA member would have made the
decision to revoke the permit.  After
listening to the tape and reading the transcript of the June 7 executive
session, the expert testified that in his opinion the BOA members Ashould not have acted the way they did.@ 
The expert testimony does not change our conclusion that whether the
interpretation of the Ordinance in this case was performed in good faith is a
question of law.

2.         Subjective Evidence

Champion also contends that the decision to revoke
the permit was motivated by the personal animus of some Terrell Hills residents
and the members of the BOA to having apartments built on Eventide Drive.  It claims that the subjective opinions of
public officials vitiates their claim of immunity by precluding a finding of good
faith.

We have consistently held that probative evidence
on the issue of good faith is limited to objective evidence.  See Wadewitz,
951 S.W.2d at 466 (A[A] court
must measure good faith in official immunity cases against a standard of
objective legal reasonableness, without regard to the officer=s subjective state of mind.@); accord Chambers, 883 S.W.2d
at 656.

The U.S. Supreme Court has also established an
objective reasonableness test for determining whether a public official acted
in good faith as a condition to the protection of federal qualified immunity.[3]  The Supreme Court stated bluntly: A[A] defense of qualified immunity may
not be rebutted by evidence that the defendant=s
conduct was malicious or otherwise improperly motivated.  Evidence concerning the defendant=s subjective intent is simply
irrelevant to that defense.@  Crawford-El v. Britton, 523 U.S. 574,
588 (1998).

Although the court of appeals acknowledged that
this Court has established an objective standard for the good faith analysis,
it nevertheless determined that subjective bad faith should be considered in
evaluating good faith in this case.  70
S.W.3d at 229-30.  We again reject
reliance on subjective evidence in considering the good faith prong of the
official immunity doctrine.  It is not
germane to the official immunity analysis.

There are important reasons for limiting reliance
only to objective evidence in consideration of good faith.  An objective standard furthers the purpose of
official immunity, which is to permit decisionmaking
public officials to perform their jobs without hesitation or concern that their
decisions will subject them individually to civil liability under state
law.  Kassen,
887 S.W.2d at 8; Baker, 621 S.W.2d at 643-44.  Suits against government officials exact
costs against our society, including Athe
expenses of litigation, the diversion of official energy from pressing public
issues, and the deterrence of able citizens from acceptance of public office.@ 
Harlow, 457 U.S. at 814. 
Employing a subjective standard of good faith significantly increases
these societal costs.  Id. at
816.  The Supreme Court explained:

 

[T]he
judgments surrounding discretionary action almost inevitably are influenced by
the decisionmaker=s
experiences, values, and emotions.  These
variables . . . frame a background in which there often is no clear end to the
relevant evidence.  Judicial inquiry into
subjective motivation therefore may entail broad-ranging discovery and the
deposing of numerous persons, including an official=s
professional colleagues.  Inquiries of
this kind can be peculiarly disruptive of effective government.

 

Id. at 816-17.  We
likewise recognize a substantial public interest in shielding public officials
from the costs associated with defending civil lawsuits instituted to challenge
their judgment on public issues.

Through the audio recording and the transcript of
the June 7 executive session, Champion attempted to show that the BOA members= actions were improperly
motivated.  It claims that some of their
comments suggest that their feelings on the nature of apartment dwellers
controlled their decision to revoke the building permit.  During the executive session, the BOA members
discussed  whether the presence of the
apartments would lower property values by bringing Ascum@ into the neighborhood and whether
residents of apartment complexes would bring Acars
on the street@ and Aloud boom boxes.@  One BOA member referred to another apartment
complex in the area as a Awhorehouse.@

Although we do not condone the negative comments
by the BOA members, the objective standard of good faith does not permit an
inquiry into what subjectively could have motivated the BOA=s decision.  Wadewitz,
951 S.W.2d, at 466; Chambers, 883 S.W.2d at 656; see also Crawford-El,
523 U.S. at 588.  As conclusively
established through objective evidence at trial, the 80-foot street frontage
requirement in Ordinance 634 was justification for the BOA members= votes.

IV. 
Conclusion

We hold that the BOA members established their
affirmative defense of official immunity as a matter of law.  Therefore, the trial court properly granted
the BOA members= motion
for judgment n.o.v. 
Accordingly, we reverse the court of appeals=
judgment in part and render judgment that Champion take nothing.

 

 

________________________________________

J. Dale Wainwright

Justice

 

 

OPINION
DELIVERED:  July 9, 2004











[1]  Primero=s three members each had a one-third interest in the
Eventide property.  However, after the
dispute with the BOA arose, the members settled their interests in Primero with James Spears (owner of Champion) becoming sole
owner of Primero in return for Champion=s release of its one-third interest in the Eventide
property to Trevino and Tamez.





[2]  The court of
appeals voted 3-3 to deny the motion for reconsideration of the en banc
opinion.  The seventh justice was new to
the court and did not participate in the motion for reconsideration.





[3]  Federal courts
recognize a qualified immunity for public officials, which is analogous
although not identical to our official immunity.  Qualified immunity protects governmental
officers with discretionary authority from liability so long as their conduct
does not violate clearly established statutory or constitutional rights of
which a reasonable person would have known. 
Crawford-El v. Britton, 523 U.S. 574, 588 (1998); Harlow v.
Fitzgerald, 457 U.S. 800, 818 (1982); Wood, 420 U.S. at 321-22.